COURT OF APPEALS









COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS

 

NICOLAS
DOUCAKIS, Individually and as     )

Principal,
Owner, and Sole Shareholder of        )

FIBERMESH
(Sussie) S.A. and as Director and    )

Sole
Shareholder FND INDUSTRIES               )             
No.  08-00-00296-CV

(Overseas),
Ltd., FIBERMESH (Suisse), S.A., )

and
FND INDUSTRIES, (Overseas), LTD.,     )                   Appeal from the

                                                                              )

Appellants,                       )               192nd District
Court

                                                                              )

v.                                                                           )         
of Dallas County, Texas

                                                                              )

SPEISER,
KRAUSE, MADOLE, P.C., KENT )                 
(TC# 98-07432K)

KRAUSE,
and KEITH EVANS,                         )

                                                                              )

Appellees.                        )

                                                                              )

 

O
P I N I O N

 








Appellants
Nicolas Doucakis (ADoucakis@), Fibermesh (Suisse) S.A. (AFibermesh@), and FND Industries
(Overseas), Ltd. (AFND@) appeal from the trial court=s denial of the Appellants= plea in abatement and
granting of the plea to jurisdiction and summary judgment for Appellees
Speiser, Krause, Madole, P.C. (ALaw Firm@), Kent Krause (AKrause@), and Keith Evans (AEvans@).  On appeal, Doucakis, Fibermesh, and FND raise
six issues:  (1) the trial court erred in
dismissing Fibermesh and FND from the suit when the corporations had a right to
reinstatement; (2) the trial court abused its discretion in denying the plea in
abatement for Fibermesh and FND; (3) the trial court erred in granting the
summary judgment against Doucakis; (4) the trial court erred in denying
Doucakis=s standing as the representative of Fibermesh and FND;
(5) the trial court erred in not applying estoppel to bar the Appellees from
contending the nonexistence of Fibermesh and FND; and (6) the trial court erred
in dismissing the claims based on the misnomer of parties.  We will affirm in part and reverse and remand
in part.

SUMMARY
OF THE EVIDENCE

Background

In 1985,
Doucakis and Fibermesh entered into a distribution contract with Synthetics
Industries (Texas) Inc. (ASynthetics@), the manufacturer of a polypropylene fiber additive
for concrete, called Afibermesh.@  Doucakis and
Fibermesh were the sole distributor of fibermesh in Switzerland at the
time.   Since Synthetics was located in
Georgia, the contract called for all disputes to be arbitrated there.

FND was
setup as a tax-saving mechanism for Fibermesh. 
Synthetics would send the invoice for Fibermesh to FND, and FND in turn
would bill Fibermesh.  FND was also made
a part of the arbitration agreement between Synthetics and Fibermesh.

A dispute
arose between Fibermesh and Synthetics in 1989. 
Fibermesh accused Synthetics of endorsing a French distributor, Pieri,
just across the border from Geneva. 
Fibermesh demanded that Synthetics prohibit Pieri from marketing the
product in Switzerland, but the attempt was allegedly futile.   Fibermesh also accused Synthetics of (1)
conspiring with Fibermesh=s employees to steal trade secrets, such as customer
lists, and (2) selling the fibers independently of Fibermesh.  In 1993, Fibermesh informed Synthetics of its
intention to bring suit for breach of contract.








To pursue
the arbitration in Georgia, Fibermesh, FND, and Doucakis entered into a
retainer agreement with the Law Firm. 
Kent Krause and Keith Evans were assigned to the case.  Krause was the managing partner of the Law
Firm=s Dallas, Texas branch, and
Evans was a British attorney practicing with the Law Firm=s California branch.

An
arbitration order was entered against Doucakis, Fibermesh, and FND on September
20, 1996.  A motion to reconsider was
filed on October 10, 1996 and denied by the arbitrator on November 18, 1996,
and Synthetics filed a motion to confirm the order with a Georgia Superior
Court on November 21, 1996.  A final
order was entered on May 9, 1997, after the sixty-day period to contest the
arbitration order had passed.

Procedural
History

On
September 22, 1998, Doucakis brought this suit for legal malpractice as an
individual and Ain his representative capacity@ as the Director, Creditor,
Liquidator, and Sole Shareholder of Fibermesh and on behalf of FND as its
Director and Sole Shareholder.  In the
fourth amended petition, Doucakis, Fibermesh, and FND alleged that the Law
Firm, Krause, and Evans had committed legal malpractice, breach of contract,
breach of fiduciary duty, and violation of the Texas Deceptive Trade Practices
Act.








The Law
Firm, Krause, and Evans filed a motion for summary judgment on October 29,
1999, in which they claimed that Doucakis, Fibermesh, and FND lacked standing
and that they could not prevail on the elements of their causes of action.  On February 2, 2000, the Law Firm, Krause,
and Evans filed a second motion for summary judgment coupled with a plea to the
jurisdiction.  In the second motion, the
Law Firm, Krause, and Evans again challenged the standing of the parties and
brought the statute of limitations defense as well as a motion to contest the
authority of the plaintiffs= counsel to bring the claim under Tex.R.Civ.P 12.  Doucakis, Fibermesh, and FND filed a plea in
abatement along with their response to the plea to the jurisdiction and summary
judgment.

Without
stating the basis of his decision, the trial court granted the summary judgment
and plea to the jurisdiction for the Law Firm, Krause, and Evans and dismissed
Doucakis, Fibermesh, and FND from the suit on March 10, 2000.  On May 10, 2000, the trial court overruled
the motion to rehear the plea in abatement and the dismissal for want of
jurisdiction, and on May 22, 2000, the trial court issued an order denying the
plea in abatement.

DISCUSSION

Doucakis,
Fibermesh, and FND have brought six issues upon appeal, which may be classified
into two sub-groups:  (1) the trial court=s granting of the Appellees= plea to jurisdiction and
the motion for summary judgment; and (2) the trial court=s denial of the Appellants= plea for abatement and
defenses.  We will discuss each category
in turn. 

Granting
of the Summary Judgment and the Plea to Jurisdiction

The Law
Firm, Krause, and Evans filed a motion for summary judgment coupled with a
challenge to the trial court=s jurisdiction, alleging that Doucakis, Fibermesh, and
FND had no standing, could not establish the elements of their claim, the
statute of limitations had run on FND, and the Appellants= counsel lacked authority
under Tex.R.Civ.P. 12.  The trial court did not provide findings or
grounds for summary judgment.  We can
therefore affirm the judgment on appeal if any of the theories advanced are
meritorious.  See State Farm Fire
& Casualty Co. v. S.S. & G.W., 858 S.W.2d 374, 380 (Tex. 1993);
American Eagle Ins. Co. v. Nettleton, 932 S.W.2d 169, 174 (Tex.App.--El
Paso 1996, writ denied).








Unlike
other final judgments reviewed on appeal, we do not review the summary judgment
evidence in the light most favorable to the judgment of the trial court.  See Borrego v. City of El Paso, 964
S.W.2d 954, 956 (Tex.App.--El Paso 1998, pet. denied).  As explained in Nixon v. Mr. Property
Management Co., Inc., 690 S.W.2d 546, 548‑49 (Tex. 1985), the movant
for summary judgment has the burden of showing there is no genuine issue of
material fact and that it is entitled to summary judgment as a matter of
law.  See Tex.R.Civ.P. 166a(c). 
In deciding whether there is a disputed material fact issue precluding
summary judgment, all admissible evidence favorable to the non‑movant
will be taken as true; every reasonable inference must be indulged in favor of
the non‑movant, and all doubts resolved in the non‑movant=s favor.  The movant is required to disprove at least
one element of each of the non-movant=s theories of recovery or to
plead and conclusively establish an affirmative defense, which defeats the
non-movant=s cause of action. 
City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 679
(Tex. 1979).  The purpose of summary
judgment is the elimination of patently unmeritorious claims or untenable
defenses; it is not intended to deprive litigants of their right to a full
hearing on the merits of any real issue of fact.  See Gulbenkian v. Penn., 151 Tex. 412,
416, 252 S.W.2d 929, 931 (1952); Judge David Hittner & Lynne Liberato, Summary
Judgments in Texas, 34 Hous.L.Rev.
1303, 1307 (1998).

We will
first discuss the standing of the Appellants, their claim, the statute of limitations
defense, and finally the motion under Tex.R.Civ.P.
12.

Standing
and Capacity of the Appellants








The Law
Firm, Krause, and Evans challenged the jurisdiction of the trial court on the
basis that Doucakis, Fibermesh, and FND lacked standing, because the two
corporations are non-existent and Doucakis cannot bring suit as the
corporations= representative. 
Doucakis asserts on appeal that he has standing, because he is the
personal representative of the corporations and was bound personally on the
contracts that the corporations were a party to and he also claims that
Fibermesh and FND have standing, because they have the right to be
reinstated.  

Standing
is a party=s justiciable interest in the suit, or a personal stake
in the controversy.  See Nootsie, Ltd.
v. Williamson City Appraisal Dist., 925 S.W.2d 659, 661 (Tex. 1996).  Standing is an aspect of subject-matter
jurisdiction.  See Texas Ass=n of Bus. v. Texas Air
Control Bd.,
852 S.W.2d 440, 446 (Tex. 1993). 
Capacity is however the legal authority of a party to file or defend a
suit, whether it has standing or not.  See
Nootsie, 925 S.W.2d at 661.  A court
may enter judgment only in the capacity in which the defendant was sued.  See Werner v. Colwell, 909 S.W.2d 866,
870 (Tex. 1995).  When reviewing a
challenge to a dismissal for lack of jurisdiction, the appellate court must
accept as true all factual allegations in the plaintiff=s pleadings.  See Huston v. F.D.I.C., 663 S.W.2d
126, 129 (Tex.App.--Eastland 1983, writ ref=d n.r.e.), quoting
International Bank of Commerce of Laredo v. City of Laredo, 608 S.W.2d 267,
270 (Tex.Civ.App.--San Antonio 1980, writ dism=d).  The reviewing court looks to the pleader=s intent and construes the
pleadings in the plaintiff=s favor.  See
Texas Ass=n of Bus., 852 S.W.2d at 446.

The
Corporations








In Texas,
a suit is not void even if a corporation lacks the capacity to sue, and a
defendant must challenge a plaintiff=s lack of capacity through a
verified plea in abatement.  See Tex.R.Civ.P. 93(1); Nootsie, 925
S.W.2d at 662; El T. Mexican Restaurants, Inc. v. Bacon, 921 S.W.2d 247,
250 (Tex.App.--Houston [1st Dist.] 1995, writ denied).  If a verified plea in abatement is not filed,
then the defendant waives the challenge to capacity.  See Nootsie, 925 S.W.2d at 662.  Although the Law Firm, Krause, and Evans
confused Astanding@ with Acapacity@ in its Aplea for jurisdiction,@ it clearly intended to challenge
both the standing and capacity of the corporations in the plea based on the
fact of their non-existence; therefore, the Appellants did not waive the
challenge to capacity.

Whether a
foreign corporation exists for the purpose of prosecuting and defending a suit
is determined by the law of the place of its incorporation.  See Miller Management Co. v. State,
140 Tex. 370, 167 S.W.2d 728, 730 (1943); Country Cupboard, Inc. v. Texstar
Corp., 570 S.W.2d 70, 72 (Tex.Civ.App.--Dallas 1978, writ ref=d n.r.e.).  Fibermesh was incorporated under Swiss law,
while FND was incorporated in the Isle of Man. 
The Appellants have pleaded the foreign law, and therefore we will apply
the foreign law to ascertain the corporations= status.

Fibermesh

Both
parties point to the same section of Swiss law as controlling:  Swiss Corporate Law ' 56, N 151-156, translated
in Swiss Corporate Law
(Stämpfli+Cie AG Bern 1996):

152(d)  The cancellation of the company has only declaratory
effect.  The company does not lose
its legal existence as a result of the deletion, but only as a result of the
termination of the liquidation activities. 
On the one hand, a completely liquidated company loses its existence
even if the cancellation of its entry in the register of commerce is
omitted.  On the other hand, a company
can continue to exist, as long as it still has assets.

 

153      However, the cancellation of the entry in
the Register of commerce has de facto consequences, as the cancelled
company loses its capacity to act externally:  it may neither sue nor start debt collection
proceedings, nor can it be sued or be subject to debt collection
proceedings.  In order to liquidate still
existing activities a re-registration may be necessary;

 

                                                             .                .               .

 








154(a)  Upon request of a debtor, an executive organ
of the company or of a shareholder, a company may exceptionally be re-registered,
if assets or liabilities that were not taken into consideration
during the liquidation proceedings are subsequently discovered. [Emphasis in
original].  [Footnotes omitted].

 

In October
1995, Fibermesh was placed on involuntary liquidation, which was revoked in
January 1996.  In that same month,
Fibermesh entered into voluntary liquidation, and the liquidation proceeding
commenced in a Geneva court in June 1997. 
However, when the Swiss Bankruptcy Office and the Geneva Court found
Fibermesh had insufficient assets to cover the cost of the bankruptcy
proceeding, it was terminated in November 1998, and the company was deleted
from the Swiss registry of Commerce.

Under the
Swiss law, since the bankruptcy and the liquidation proceeding were not
completed, Fibermesh was not completely dissolved, although it was deleted from
the Swiss registry of commerce, and it still has an asset in the form of the
current lawsuit and may be restored by re-registration.  Therefore, Fibermesh lacks the capacity to
bring a lawsuit on its own, but it is not deprived of the right to the lawsuit.

FND

The Isle
of Man=s Companies Act 1931 governs the dissolution,
restoration, and actions of corporations incorporated in the Isle of Man:








' 274(1)          Where
a company is dissolved, all property and rights whatsoever vested in or held on
trust for the company immediately before its dissolution (including leasehold
property but not including property held by the company on trust for any other
person) shall be deemed to be bona vacantia and shall accordingly vest
in the Treasury in trust for the Crown and may be dealt with in the same manner
as other bona vacantia accruing to the Crown.  [Emphasis in original].

 

Under the Companies Act 1931
' 273B, a company struck from
the registers of Isle of Man may be restored within twelve years.  We have been unable to find any provisions on
the power of a dissolved corporation to act in the excerpts of the Companies
Act filed by the parties.  

FND was
struck from the registry of the Isle of Man on December 6, 1993.  While the dispute between Synthetics and
Fibermesh arose in 1989, Fibermesh and Doucakis did not enter into a retainer
agreement with the Law Firm until August 6, 1994, the arbitration order was
entered against them on September 20, 1996, and the final judgment entered by a
Georgia Superior Court on November 21, 1996.[1]  The current suit was filed on September 22,
1998.

Arguably,
the cause of action did not arise before FND was dissolved by the Isle of Man
Department of Treasury.  In the absence
of a pleading to the foreign rule, the foreign law is construed to be the same
as that of Texas law.  See Gevinson v.
Manhattan Construction Co. of Oklahoma, 449 S.W.2d 458, 465 n.2 (Tex.
1969), citing Milner v. Schaefer, 211 S.W.2d 600, 603 (Tex.Civ.App.--San
Antonio 1948, writ ref=d).  Since the
cause of action arose after FND was struck from the registry of the Isle of
Man, we will apply Texas Law.  








In Texas,
a corporation maintains legal title to its assets, such as a cause of action,
until it is permanently dissolved.  See
Regal Constr. Co. v. Hansel, 596 S.W.2d 150, 153 (Tex.Civ.App.--Houston
[1st Dist.] 1979, writ ref=d n.r.e.).  Until
it is dissolved, a corporation has the standing to sue, because it has the
legal title to the cause of action; however, because the privilege to sue has
been taken away, it is incapacitated from maintaining the suit.  See Wingate v. Hajdik, 795 S.W.2d 717,
718-19 (Tex. 1990).  A corporation does
not cease to exist merely because its charter has been forfeited, so long as
there is a statutory right to have the corporate charter reinstated.  See Longoria v. Atlantic Gulf Enter., Inc.,
572 S.W.2d 71, 79 (Tex.Civ.App.--Corpus Christi 1978, writ ref=d n.r.e.).  In Lighthouse Church of Cloverleaf v.
Texas Bank, 889 S.W.2d 595, 600-01 (Tex.App.--Houston [14th Dist.] 1994,
writ denied), the Court held that a deed executed to a corporation that had
forfeited its charter was not void, since the corporation had a statutory right
to reinstatement.  See id.

Under the
law of Isle of Man, FND had to seek restoration by December 6, 2005.  It initiated the effort to seek restoration
on December 8, 1999, when it sent a notice to the Isle of Man Customs
Department of its intention.  Since FND
has the statutory right to be restored to the registry and has taken steps to
be restored, FND has not yet been permanently dissolved.  Under Texas law, a corporation with the
statutory right to be restored has the legal title to property, such as a
lawsuit.  See Regal Constr. Co.,
596 S.W.2d at 153.  FND has the standing
but not the capacity to maintain the current suit.

Doucakis

Doucakis
urges that he has standing individually and as a representative of Fibermesh
and FND.  We will examine if Doucakis has
standing (1) individually and (2) as a representative of Fibermesh and FND.

Doucakis=s Individual Claim








The Law
Firm, Krause, and Evans argue that Doucakis had to establish he was a party to
the contract and arbitration agreement that underlie the current legal
malpractice action, in order to recover on the legal malpractice claim.  To recover in a legal malpractice action, the
plaintiff must prove he or she would have prevailed but for the negligence of
the attorney.  See Jackson v. Urban,
Coolidge, Pennington & Scott, 516 S.W.2d 948, 949
(Tex.Civ.App.--Houston [1st Dist.] 1974, writ ref=d n.r.e.).  We agree that for Doucakis to recover
individually in the current suit, he must have been able to recover at the
arbitration.  Although the record does not
contain the pleadings or claims submitted in arbitration, we presume the claims
would be based on an agreement between Synthetics and Fibermesh or
Doucakis.  If there is no agreement
between Doucakis and Synthetics, then Doucakis could not have recovered, and
hence could not recover individually on the current legal malpractice action.

Both
parties have filed the distribution contract and the amendment to the
arbitration agreement between Synthetics and Fibermesh.[2]  Doucakis argues that the distribution
contract clearly named him as an individual and that this is supported by the
fact that the later amendment to the arbitration agreement names him
individually along with Fibermesh and FND. 
The Law Firm, Krause, and Evans point out that the first paragraph of
the distribution contract states that the parties to the contract are
Synthetics and Subil S.A., with Subil (for an inexplicable reason) to be
referred thereafter as ADoucakis.@








Whether a
contract is ambiguous is a question of law for the court.  See R & P Enterp. v. LaGuarta, Gavrel
& Kirk, Inc., 596 S.W.2d 517, 518 (Tex. 1980).  A trial court=s conclusions of law are
reviewed de novo.  See Hervey
v. Flores, 975 S.W.2d 21, 23 (Tex.App.‑-El Paso 1998, writ
denied).  A contract is ambiguous when
its meaning is uncertain and doubtful or it is reasonably susceptible to more
than one meaning.  See Coker v. Coker,
650 S.W.2d 391, 393 (Tex. 1983).  When a
contract contains an ambiguity, the interpretation of the contract becomes a
fact issue, and a summary judgment is improper. 
See Coker, 650 S.W.2d at 394. 


The
language of the distribution agreement states:[3]

Agreement,
effective ______ [blank] by and between Synthetic Industries (Texas) Inc.,
d.b.a. Fibermesh Company, herein referred to as Fibermesh, and Subil S.A.,
herein referred to as DISTRIBUTOR Doucakis.

 

The amendment to the
arbitration paragraph of the distribution agreement also states:

WHEREAS,
in 1985 an agreement was entered into between Synthetic Industries (Texas),
Inc. d/b/a Fibermesh Company and Subil, S.A. (ASwitzerland Agreement@) which provided, inter
alia, for Subil, S.A. to distribute Fibermesh in Switzerland;

                                                              .               .               .

 

WHEREAS,
after September, 1985, Subil, S.A. changed its name to Fibermesh (Suisse), S.A.
. . . . 

 

In his
affidavit, Doucakis stated that he had entered into a distribution agreement
with Synthetics, and he referred to the above-referenced distribution
contract.  However, the original
distribution contract only states that the parties to the agreement are
Synthetics and Subil S.A., and that Subil will be referred as ADoucakis.@  Furthermore, the later amendment to the
arbitration agreement clearly states that the original agreement was entered
into between Synthetics and Subil, without naming Doucakis as an
individual.  A contract is ambiguous only
when the face of the instrument leaves it genuinely uncertain which of two or
more meanings is the proper one; if only one reasonable meaning emerges, it is
not ambiguous.  We do not think the
contracts are ambiguous.








In
construing an unambiguous contract, we discern the parties= intent from the face of the
agreement itself, without their present interpretation.  See Intratex Gas Co. v. Puckett, 886
S.W.2d 274, 277-78 (Tex.App.--El Paso 1994, no writ).  The face of the contracts are clear:  The parties to the original distribution
contract were only Synthetics and Subil, S.A. (later changed to
Fibermesh).  If Doucakis was not a party
to the distribution agreement, then he could not have prevailed at the
arbitration.  Doucakis does not have an
individual claim against the Law Firm, Krause, and Evans.  

Doucakis=s Claim as a Representative
of Fibermesh and FND

Neither
party has plead the proper foreign law governing the standing or capacity of a
representative of the foreign corporations. 
In the absence of proper invocation of foreign law, Texas courts must
presume the foreign law to be the same as that of Texas.  See J. Parra e Hijos, S.A. de C.V. v.
Barroso, 960 S.W.2d 161, 167 n.6 (Tex.App.‑-Corpus Christi 1997, no
pet.), citing Country Cupboard, Inc., 570 S.W.2d at 72.  Therefore, we shall analyze Doucakis=s standing under Texas law.








It is
well-established that a shareholder of a corporation, even a sole shareholder,
may not bring suit on the corporation=s cause of action in the
shareholder=s own name.  See
Wingate, 795 S.W.2d at 719; El T. Mexican Restaurants, Inc., 921
S.W.2d at 251.  However, in Texas, when a
corporation is incapacitated and forfeits its right to bring suit, its assets
are bifurcated so that while legal title remains in the corporation, the
beneficial title vests in the shareholders. 
See El T. Mexican Restaurants, Inc., 921 S.W.2d at 251.  A holder of the beneficial title to the
corporation=s assets may prosecute or defend in the courts as
necessary to protect the holder=s property rights. 
See id., citing Humble Oil & Ref. Co. v. Blankenburg,
149 Tex. 498, 235 S.W.2d 891, 894 (1951). 
Therefore, a shareholder does not have the standing to bring suit on a
corporation=s cause of action but may have the capacity to sue as
the representative of the corporation.  See
El T. Mexican Restaurants, Inc., 821 S.W.2d at 51.  The shareholder may not recover
individually.  See id.  A temporary change in a corporation=s status bars a shareholder
from becoming the corporation=s Asuccessor in interest.@  See id. at 252.

Both Fibermesh
and FND have applied for restoration to the registries of their respective
countries.  Paul David, a licensed
auditor and Afiduciaire@ authorized to represent corporations before the Swiss
bankruptcy office, stated in an affidavit that he had initiated the proceeding
to reinstate Fibermesh to the Swiss registries. 
FND=s English solicitor, Paul Roystan Beckett, stated in an
affidavit that FND had initiated restoration of the corporation.[4]

Karl
Arnold, Fibermesh=s expert and a Swiss bankruptcy attorney, stated in his
affidavit that A[i]n the event that, upon application, Fibermesh
(Suisse) S.A. will be re-entered in the Register of Commerce of Geneva, Nicolas
P. Doucakis will be in a position to represent the company as liquidor with
single signing authority, unless the Geneva Court, the Geneva Bankruptcy
Office, the Register of the Geneva Registrar of Commerce or the shareholders of
Fibermesh (Suisse) S.A. will decide otherwise.@

The record
indicates that the corporations have not yet been fully dissolved but rather
are in a temporary change of status. 
Under Texas law, since the corporations have standing but lack capacity,
Doucakis is authorized to bring suit on behalf of the incapacitated
corporations but is not a 

Asuccessor-in-interest@ to the corporations.








Appellants= Claims

We have
already dealt with Doucakis=s individual claim and have held that he was not a party
to the original distribution contract between Synthetics and Fibermesh.  As to Fibermesh and FND=s claims, the Law Firm,
Krause, and Evans alleged that the plaintiffs could not establish that they
could have prevailed against Synthetics, that they had damages, and that there
were no experts named.  In response,
Fibermesh and FND filed depositions from two witnesses involved in the
fibermesh trade; the affidavit of John G. Parker, an expert on the standard of
legal practice; the affidavit of David M. Katzen, an expert on the damages
suffered by the plaintiffs; the affidavit of Dr. Marc Casthelaz, who had
treated Doucakis from 1988 to at least 1999; and finally Dr. Casthelaz=s medical records on
Doucakis.  After reviewing the record, we
cannot say that the Law Firm, Krause, and Evans have established that there are
no fact issues as to Fibermesh=s and FND=s claims, since there is a fact issue at least as to the
negligence of the Law Firm, Krause, and Evans. 

The
Statute of Limitations Defense Against FND

The Law
Firm, Krause, and Evans argued in their motion for summary judgment that the
statue of limitations have run on FND, because FND was named as AFND Industries, Ltd.@ without the A(Overseas).@  On appeal, FND contends that the misnomer did
not mislead the Appellees.  Appellees Law
Firm, Krause, and Evans did not address this issue in their brief. 








The
statute of limitations is an affirmative defense.  See Woods v. William M. Mercer, Inc.,
769 S.W.2d 515, 517 (Tex. 1988).  A
defendant may move for summary judgment on its own affirmative defense.  See Randall=s Food Mkts., Inc. v.
Johnson,
891 S.W.2d 640, 644 (Tex. 1995).  A
defendant moving for summary judgment on its affirmative defense must prove
each element of the defense as a matter of law, leaving no issues of material
fact.  See Velsicol Chem. Corp. v.
Winograd, 956 S.W.2d 529, 530 (Tex. 1997).

In the
motion for summary judgment, the Law Firm, Krause, and Evans argued that FND
had actually filed suit on December 31, 1999, because FND was identified as AFND Industried, Ltd.@ until the name was
corrected to AFND Industried (Overseas) Ltd.@ in the plaintiffs= fourth amended
petition.   However, in the amendment to
the arbitration agreement, FND was identified merely as AFND Industries@ without the A(Overseas).@  Since the Law Firm, Krause, and Evans must
have reviewed that document in their representation of FND during the
arbitration, they must have been aware that FND was not always referred by AFND Industries (Overseas)
Ltd.@  We do not think that the misnomer misled the
Law Firm, Krause, and Evans.  The statute
of limitations does not apply to FND.  

Tex.R.Civ.P. 12 Motion

In their
motion for summary judgment, the Law Firm, Krause, and Evans also challenged
the authority of the Appellees= counsel to represent Fibermesh and FND in the lawsuit,
since the corporations did not have standing. 
There is no record that the trial court ruled upon the issue.  In any case, any error has been overruled by
our holding above that Fibermesh and FND has standing but not the capacity to
bring suit.

Appellants= Plea in Abatement and
Defense








Doucakis,
Fibermesh, and FND filed a plea in abatement, to hold the case open until both
Fibermesh and FND should be reinstated on their respective country=s registries and asserted
the defense of estoppel against the Law Firm, Krause, and Evans.[5]

Plea
in Abatement

A plea in
abatement is filed by a defendant to challenge a plaintiff=s pleadings and to identify
an impediment to the suit.  See
America Online, Inc. v. Williams, 958 S.W.2d 268, 272 (Tex.App.--Houston
[14th Dist.] 1997, no pet.).  Doucakis,
Fibermesh, and FND, the plaintiffs below, filed the plea to ask the trial court
to indefinitely hold the case open while Fibermesh and FND completed the
process of re-registering and thus restore the companies and their
standing.  Having concluded already that
the corporations have standing, we see no need to reach this issue.

Defense:  Estoppel

We have
already concluded that Fibermesh and FND have standing and that Doucakis may
maintain the suit as the incapacitated corporations= representative.  Therefore, we see no need to address the
issue of estoppel.

For the
foregoing reasons, we affirm the judgment in part as to Doucakis=s individual claims and
reverse and remand in part as to the claims of the two corporations FND and
Fibermesh for trial.

 

June
27, 2002

DAVID
WELLINGTON CHEW, Justice

 

Before Panel No. 2

Barajas, C.J., McClure, and
Chew, JJ.

 

(Do Not Publish)











[1] The retainer agreement in
the record does not name FND as a party; however, the Appellants claim that the
Law Firm agreed to represent FND later, without limitations.





[2]  The agreement originally named Subil, S.A. as
a party.  Subil, S.A. was later renamed
as Fibermesh (Suisse), S.A.





[3] The contract was a Afill-in-the-blank@ type of form, with the
parties= names filled-in at the appropriate places.





[4] The record indicates that
the only barrier to the restoration of FND was an objection from one of its
creditors.  Paul Beckett stated that the
parties were negotiating to resolve the dispute, but that the creditor had
rejected their first offer.





[5] Although the Law Firm,
Krause, and Evans assert in their brief that Doucakis, Fibermesh, and FND
failed to assert the defense of estoppel in any of their responses to the
motion for summary judgment or in their plea in abatement, Doucakis, Fibermesh,
and FND clearly argued in their supplemental response to the motions for
summary judgment filed on January 4, 2000, that the Law Firm, Krause, and Evans
should be estopped from asserting that the corporations did not exist.