**WILLIAMSON COUNTY APPRAISAL DISTRICT, Appellant,**

v.

**NOOTSIE, LTD. and State of Texas, Appellees.**

**No. 03–93–00588–CV.**

Court of Appeals of Texas, Austin.

June 7, 1995.

Rehearing Overruled Sept. 27, 1995.

Russell R. Graham, Calame, Linebarger, Graham & Pena, L.L.P., Austin, for appellant.

William Ikard, Popp & Ikard, Dan Morales, Atty. Gen., Gregory E. Perry, Asst. Atty. Gen., Taxation Div., Austin, for appellees.

Before POWERS, JONES and B.A. SMITH, JJ.

POWERS, Justice.

Williamson County Appraisal District (the "District") appeals from an adverse judgment rendered in a suit brought by Nootsie, Ltd. for judicial review of an order issued by the District appraisal review board. *See* Tex. Tax Code Ann. §§ 42.21–.42 (West 1992 & Supp.1995) (the "Code"). We will reverse the trial-court judgment and render judgment as indicated below.

## THE CONTROVERSY

Nootsie applied to the appraisal review board to have Nootsie's land in Williamson County classified as "qualified open-space land" under the provisions of section 23.51(1) of the Code. *See* Code §§ 23.51(1), .54. For ad valorem tax purposes, land classified as "qualified open-space land" is appraised not at its market value but according to an income-capitalization method, provided the result does not exceed market value. Code § 23.52. The board rejected Nootsie's application, believing section 23.51(1) of the Code is unconstitutional to the extent it purports to include in the definition of "qualified open-space land" any "land that is used principally as an ecological laboratory by a public or private college or university." It is undisputed that Nootsie's land is used precisely for that purpose and is therefore entitled to the classification of "qualified open-space land" unless section 23.51(1) is unconstitutional to the extent the District claims.

Nootsie sued the District for review of the board's rejection order. The District counterclaimed for a declaratory judgment that section 23.51(1) is unconstitutional on the ground and to the extent claimed. After proper service of notice, the attorney general of Texas intervened and defended the constitutionality of section 23.51(1). Upon stipulated facts, the trial court adjudged the statute not unconstitutional, directed the District to grant Nootsie's application, and awarded ancillary relief. The District appealed to this Court.

## DISCUSSION AND HOLDINGS

### I.

Article VIII of the Texas Constitution sets forth in sections 1(a) and 1(b) the norm or standard for State taxation. Section 1(a) requires that "[t]axation shall be equal and uniform"; section 1(b) directs that all real property "shall be taxed in proportion to its value." *See* Tex. Const. art. VIII, §§ 1(a), 1(b). Taxation of real property is equal and uniform when it is based solely on the *market value* of the property involved. *Lively v. Missouri, K. & T. Ry. Co.*, 102 Tex. 545, 120 S.W. 852, 856 (1909). Believing the market-value norm worked unfairly in the case of "agricultural property," the legislature in 1978 proposed "a constitutional amendment relating to ad valorem taxation of *agricultural property*." Act of Aug. 8, 1978, Tex. H.J.Res. 1, § 1, 65th Leg., 2d C.S., 1978 Tex.Gen.Laws 54 (the "resolution") (emphasis added). The proposed amendment would add to Article VIII of the Constitution a section 1–d–1, providing as follows:

(a) To promote the preservation of open-space land, the legislature *shall* provide by general law for taxation of *open-space land devoted to farm or ranch purposes* on the basis of its pro-

ductive capacity and *may* provide by general law for taxation of open-space land devoted to *timber production* on the basis of its productive capacity. The legislature by general law may provide eligibility limitations under this section. . . .

(b) If a property owner qualifies his land for designation for *agricultural use* under section 1–d of this article, the land is subject to the provisions of section 1–d for the year in which the designation is effective and is not subject to a law enacted under this section 1–d–1 in that year.

*Id.* § 2 (emphasis added). (The existing section 1–d of Article VIII, referred to in paragraph (b) of the proposed amendment, defined "[a]gricultural use" and provided for the taxing of such land "on the consideration of only those factors relative to such agricultural use."). Section 9 of the resolution directed that the proposed amendment "be printed to provide for voting for or against the proposition: 'The constitutional amendment providing for tax relief for . . . *agricultural* land.'" *Id.* § 9 (emphasis added). The people adopted the proposed amendment in an election held November 7, 1978. There can be no doubt that they believed the scope of the amendment was limited to the two classes of land named in the amendment, agricultural land and timber land.

Pursuant to the 1978 amendment, the legislature enacted Subchapter D of the Code, being sections 23.51–.57. To secure the taxation of "qualified open-space land" on the basis of its productive capacity, section 23.52(a) of the Code provides that the appraised value of such land shall be determined "using accepted income capitalization methods applied to average net to land," but the appraised value resulting from that method "may not exceed the market value as determined by other appraisal methods." Code § 23.52(a).

To define the land eligible for the new appraisal method, the legislature provided as follows in section 23.51(1) of the Code:

(1) "Qualified open-space land" means land that is currently devoted principally to agricultural use to the degree of intensity generally accepted in the area and that has been devoted principally to agricultural use *or* to production of timber or forest products for five of the preceding seven years *or* land that is used principally as an ecological laboratory by a public or private college or university.

Code § 23.51(1) (emphasis added). The effect of the statutory definition is to specify three different uses of land that may qualify as "open-space land" entitled to the new appraisal method described in section 23.52(a). They are: (1) land devoted principally to agricultural use to the degree of intensity indicated; (2) land devoted principally to the production of timber or forest products; and (3) "land that is used principally as an ecological laboratory by a public or private college or university." *Id.* The new appraisal method for all three is, of course, in derogation of the constitutional norm or standard that real property shall be taxed according to its market value. The 1978 amendment authorized the derogation expressly as to land devoted to an agricultural use and to timber production. The issue before us is whether the 1978 amendment also authorized, by *implication,* the new appraisal method for "land that is used principally as an ecological laboratory by a public or private college or university." We believe the 1978 amendment did not have that effect, as asserted by the District in its first point of error.

Nootsie does not contend its property comes within the definition of section 23.51(1) because the property is devoted to agricultural use or to the production of timber or forest products, the two uses authorized expressly in the 1978 amendment.[1] Nootsie contends rather that the legislature was authorized by the 1978 amendment to include a third class of land—land used as an "ecological laboratory"—because such use of open-space land is *also* within the *objective* of that

---

1. *Cf. Tarrant Appraisal Dist. v. Moore,* 845 S.W.2d 820 (Tex.1993); *Hays County Appraisal Dist. v. Robinson,* 809 S.W.2d 328 (Tex.App.— Austin 1991, no writ); *Riess v. Appraisal Dist.,* 735 S.W.2d 633 (Tex.App.—Austin 1987, writ denied).

amendment, as expressed in its introductory clause: "To promote the preservation of open-space land." We reject this theory.

■ "The Legislature may not authorize that which the Constitution prohibits." *Maher v. Lasater,* 163 Tex. 356, 354 S.W.2d 923, 925 (1962). Article VIII, sections 1(a) and 1(b) of the constitution prohibit the appraisal of land, for ad valorem tax purposes, on any basis except market value. The effect of the 1978 amendment was to remove the prohibition as to two specific classes of "open-space lands," that "devoted to farm or ranch purposes" and that "devoted to timber production." No branch of government is entitled to question the wisdom of the people in thus limiting the removal of the prohibition to these two classes of land; their limitation *may not be enlarged* or restricted further. *See Jones v. Ross,* 141 Tex. 415, 173 S.W.2d 1022, 1024 (1943) (when constitutional provision authorizes recovery of exemplary damages for wilful act, omission, or gross neglect, recovery of exemplary damages for violation of statute may not be authorized); *Cramer v. Sheppard,* 140 Tex. 271, 167 S.W.2d 147, 154 (1943) (when constitution authorizes state office holders to hold concurrently reserve-officer commissions in military and naval forces, they do not vacate their state office on being ordered to active duty, absent any constitutional provision so directing).

*Maher* is also illustrative. Article I, section 17 of the Constitution, prohibiting the taking of property for public use without adequate compensation paid in advance, also prohibits the public taking of property for private use. Tex. Const. art. I, § 17. The legislature enacted a statute authorizing the public taking of private property for private use if applicants wished it to be done and had no access to their property. The court held the statute unconstitutional as being repugnant to the constitutional prohibition against taking property for a private use. *Maher,* 354 S.W.2d at 924–25.

We believe, therefore, that the introductory clause of the 1978 amendment—"[t]o promote the preservation of open-space land"— did not constitute an implied invitation to the legislature to enlarge the two classes of land

to any greater number because the additional classes would also further the objective of promoting the preservation of open land, and thereby escape the general constitutional prohibition against appraising land on a basis other than market value. It is beyond dispute that the power to amend the constitution resides exclusively in the body of the people as an organized body politic; they have ultimate sovereignty and are the source of all State authority, provided they act within the Constitution of the United States. *See Storrie v. Cortes,* 90 Tex. 283, 38 S.W. 154, 159 (1896). To permit the additional class of open-space land—land devoted to use as an "ecological laboratory"—would be tantamount to holding that the legislature itself may amend the constitution by adding such other classes of land as that body believes wise and necessary to accomplish the constitutional objective of promoting the preservation of open-space land. This turns the constitution on its head. *See* Tex. Const. art. I, § 2. We hold section 23.51(1) of the Code unconstitutional to the extent it purports to remove from market-value appraisal open-space "land that is used principally as an ecological laboratory by a public or private college or university."

## II.

■ At oral argument, we questioned whether the District possessed authority to challenge the constitutionality of section 23.51(1) of the Code, an integral part of the statutory scheme entrusted by the legislature to the District's administration. *See Aransas County Appraisal Review Bd. v. Texas Gulf Shrimp Co.,* 707 S.W.2d 186, 196 (Tex. App.—Corpus Christi 1986, writ ref'd n.r.e.) (tax assessors are proper parties to challenge constitutionality of tax-code provisions); *Colony Mun. Util. Dist. No. 1 v. Appraisal Dist.,* 626 S.W.2d 930, 932 (Tex.App.—Dallas 1982, writ ref'd n.r.e.) (because rights of equal protection and due process of law are vested only in persons, not political subdivisions, appraisal district may not challenge constitutionality of tax-code provisions). We are grateful to counsel for their resulting post-submission briefs on the question.

■ We believe the District may challenge the constitutionality of section 23.51(1) of the Code. It is true as a general rule that government subdivisions and municipalities are not "citizens" or "persons" who may sue to invalidate statutes on the basis of constitutional provisions found within the bill of rights constituting Article I of the Texas Constitution. Tex. Const. art. I, §§ 1–30; *see McGregor v. Clawson,* 506 S.W.2d 922, 929 (Tex.Civ.App.—Waco 1974, no writ); *Harris County v. Dowlearn,* 489 S.W.2d 140, 145 (Tex.Civ.App.—Houston [14th Dist.] 1973, writ ref'd n.r.e.). Government subdivisions and municipalities may, however, assert the unconstitutionality of a statute they believe violates a constitutional norm or principle existing outside the bill of rights of Article I. *Durish v. Texas State Bd. of Ins.,* 817 S.W.2d 764, 767 (Tex.App.—Texarkana 1991, no writ); *see, e.g., Love v. City of Dallas,* 120 Tex. 351, 40 S.W.2d 20, 27 (1931) (because Article VII, section 3 of the Constitution authorizes school taxes for educating students residing within a school district, legislature may not impose upon the district an obligation to educate non-resident students). Article VIII of the Constitution, dealing with taxation and revenue, is just such a norm or principle in our view. In addition to the Code provision, District officers are required by their duties to administer any applicable provisions of the state and federal constitutions, including the mandate of Article VIII, sections 1(a) and 1(b) that real property shall be taxed according to its market value as well as section 1–d–1 designating two classes of property that are exceptions to that general rule. These constitutional provisions are limitations upon the power of the legislature to control its creatures—the appraisal districts—and its supremacy over them. When the officers of such districts believe the statutory directions of the legislature conflict with the norms and principles of the Constitution, they "are entitled to have their legal duties determined by declaratory judgment for only in this manner may well intentioned, but unlawful, acts be avoided with certainty." *Industrial Accident Bd. v. Texas Workmen's Compensation Assigned Risk Pool,* 490 S.W.2d 956, 958 (Tex.Civ.App.—Austin 1973, no writ). We hold accordingly and sustain the District's points of error.

We therefore reverse the trial-court judgment and render judgment that section 23.51(1) of the Code is unconstitutional to the extent indicated above. We order that Nootsie take nothing by its claim against the District and affirm the order of the appraisal review board.