**NOOTSIE, LTD. and State of Texas, Petitioners,**

v.

**WILLIAMSON COUNTY APPRAISAL DISTRICT, Respondent.**

No. 95–1041.

Supreme Court of Texas.

Argued April 16, 1996.

Decided July 12, 1996.

William Ikard, Sharmyn K. Lilly, George Walter McCool, Dan Morales, Christine Monzingo, Austin, for Petitioners.

Russell R. Graham, Judith A. Hargrove, Austin, for Respondent.

SPECTOR, Justice, delivered the opinion of the Court, in which PHILLIPS, Chief Justice, and HECHT, CORNYN, ENOCH, OWEN, BAKER, and ABBOTT, Justices, join.

Following the voters' passage of a constitutional amendment calling upon the Legislature "[t]o promote the preservation of open-space land," the Legislature defined ecological laboratories as property promoting "farm and ranch purposes." The question here is whether the Legislature acted constitutionally. The trial court ruled that the ecological laboratory provision is constitutional. The court of appeals reversed. 905 S.W.2d 289, 292. We hold that the statute is constitutional and therefore reverse the judgment of the court of appeals.

I

The Texas Constitution commands that "[t]axation shall be equal and uniform" and that real property "shall be taxed in proportion to its value." TEX. CONST. art. VIII, §§ 1(a), 1(b). This Court has long interpreted "value" as "market value." *See Lively v. Missouri, K. & T. Ry. Co.,* 102 Tex. 545, 120 S.W. 852, 856 (1909). In 1978, the voters added the following amendment to the Constitution:

> To promote the preservation of open-space land, the legislature shall provide by general law for taxation of open-space land devoted to farm or ranch purposes on the basis of its productive capacity and may provide by general law for taxation of open-space land devoted to timber production on the basis of its productive capacity. The legislature by general law may provide eligibility limitations under this section and may impose sanctions in furtherance of the taxation.

TEX. CONST. art. VIII, section 1–d–1(a). The Legislature then defined "open-space land" subject to productive capacity taxation as

> land currently devoted principally to agricultural use to the degree of intensity generally accepted in the area and that has been devoted principally to agricultural use or to production of timber or forest products for five of the preceding seven years *or land that is used principally as*

> *an ecological laboratory by a public or private college or university.*

TEX. TAX CODE § 23.51(1) (emphasis added).

Nootsie, Limited, owns land subject to ad valorem taxation by both the Travis County and Williamson County Appraisal Districts. As stipulated at trial, the property qualifies under section 23.51(1) because the University of Texas, Baylor University, the University of Houston, and St. Edward's University have used the land as an ecological laboratory since 1967. The Travis County Appraisal District has granted Nootsie's application for productive capacity taxation as an ecological laboratory every tax year since 1979, and the Williamson County Appraisal District granted Nootsie's application from 1979 until 1989. In 1990, however, the Williamson County Appraisal District ("district") denied Nootsie's application, claiming that the ecological laboratory provision exceeds the legislative mandate contained in article VIII, section 1–d–1(a) of the Texas Constitution. The district's appraisal review board agreed.

Nootsie then filed an appeal for judicial review. The district answered and filed a counterclaim and third-party petition naming the Attorney General of Texas as a third-party defendant. The district sought a declaratory judgment that section 23.51(1) violates the Constitution because of the inclusion of ecological laboratories as open-space land.

The trial court ruled that section 23.51(1) is constitutional. After raising the issue of the district's capacity to file its counterclaim *sua sponte,* the court of appeals held that the district could bring its challenge and that section 23.51(1) violates the Constitution. *See* 905 S.W.2d at 291–93.

II

A plaintiff has *standing* when it is personally aggrieved, regardless of whether it is acting with legal authority; a party has *capacity* when it has the legal authority to act, regardless of whether it has a justiciable interest in the controversy. *See Hunt v. Bass,* 664 S.W.2d 323, 324 (Tex.1984); *Pledger v. Schoellkopf,* 762 S.W.2d 145, 146 (Tex. 1988). Nootsie argues that the district had

neither standing nor capacity to file its counterclaim. We disagree with Nootsie's standing argument and do not reach its capacity argument.

■ Although Nootsie never raised standing at trial, it may raise the issue on appeal for the first time because standing implicates the trial court's subject matter jurisdiction. *See Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 443–44 (Tex.1993). We have noted that "[t]he general test for standing in Texas requires that there '(a) shall be a real controversy between the parties, which (b) will be actually determined by the judicial declaration sought.'" *Id.* at 446 (quoting *Board of Water Engineers v. City of San Antonio*, 155 Tex. 111, 283 S.W.2d 722, 724 (1955)).

Nootsie argues that as a political subdivision of the State, the district has no inherent vested rights protected by the Constitutions of Texas and the United States. *See Deacon v. City of Euless*, 405 S.W.2d 59, 62 (Tex. 1966). This argument misses the mark because the district does not contend that the statute violates constitutional rights belonging to the district. Instead, the district asserts an interest because it is charged with implementing a statute that it believes violates the Texas Constitution. This interest provides the district with a sufficient stake in this controversy to assure the presence of an actual controversy that the declaration sought will resolve. *See Nueces County Appraisal Dist. v. Corpus Christi People's Baptist Church, Inc.*, 860 S.W.2d 627, 630 (Tex. App.—Corpus Christi 1993) (holding that an appraisal district is the proper party to challenge the constitutionality of a tax statute), *rev'd on other grounds*, 904 S.W.2d 621 (Tex. 1995); *cf. Robbins v. Limestone County*, 114 Tex. 345, 268 S.W. 915, 917 (1925) (holding that county and road districts can sue the state highway commission on the ground of the invalidity of statutes).

■ We do not reach the merits of Nootsie's argument that the district acted without legal authority when it contested the constitutionality of the statute. After the district filed its counterclaim and third-party petition against the state, neither Nootsie nor the Attorney General raised the capacity issue.

Unlike standing, an argument that an opposing party does not have the capacity to participate in a suit can be waived. Texas Rule of Civil Procedure 93(1) requires a party to file a verified pleading if it argues that "the plaintiff has not legal capacity to sue or that the defendant has not legal capacity to be sued." We have not hesitated in previous cases to hold that parties who do not follow rule 93's mandate waive any right to complain about the matter on appeal. *See, e.g., Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 494 (Tex.1991); *Pledger*, 762 S.W.2d at 146. Here, Nootsie first questioned the district's capacity in its briefing before this Court. Therefore, Nootsie has waived its complaint about capacity.

### III

■ Nootsie argues next that section 23.51(1) does not violate the Texas Constitution and that the court of appeals erred by finding otherwise. We agree.

■ We presume that a statute passed by the Legislature is constitutional. *HL Farm Corp. v. Self*, 877 S.W.2d 288, 290 (Tex.1994); *Lower Colo. River Auth. v. McCraw*, 125 Tex. 268, 83 S.W.2d 629, 632 (1935). Furthermore, this Court must liberally construe any constitutional provision that directs the Legislature to act for a particular purpose, *Texas Nat. Guard Armory Bd. v. McCraw*, 132 Tex. 613, 126 S.W.2d 627, 634 (1939) (orig. proceeding), and we must, if possible, construe statutes to avoid constitutional infirmities. *Texas State Bd. of Barber Examiners v. Beaumont Barber College, Inc.*, 454 S.W.2d 729, 732 (Tex.1970). Finally, we must reject interpretations of a statute that defeat the purpose of the legislation so long as another reasonable interpretation exists. *Citizens Bank v. First State Bank*, 580 S.W.2d 344, 347–48 (Tex.1979).

The district presents a facial challenge to section 23.51(1). It does not argue that the statute operates unconstitutionally only in this case; instead, it argues that section 23.51(1) always contravenes article VIII, section 1–d–1(a) of the Texas Constitution. *See Texas Workers' Compensation Comm'n v. Garcia*, 893 S.W.2d 504, 518 & n. 16 (Tex.

1995). It contends that the Legislature and the voters believed that the amendment was intended only to "provide for an alternative valuation of land devoted to farming, ranching, or timber production." HOUSE COMM. ON CONSTITUTIONAL AMENDMENTS, BILL ANALYSIS, H.J.R. 1, § 2, 65th Legislature, 2d C.S. (1978). And it notes that it is the Court's duty to ascertain and give effect to the plain intent and language of the framers of a constitutional amendment and of the people who adopted it. *See City of El Paso v. El Paso Community College Dist.*, 729 S.W.2d 296, 298 (Tex.1986).

 We hold today that section 23.51(1) does not violate our Constitution. Two years ago we held "that the purpose of section 1–d–1 and sections 23.51 *et seq.* is to promote the preservation of open-space land devoted to farm and ranch purposes." *HL Farm Corp.*, 877 S.W.2d at 292. In reaching this conclusion, we specifically rejected an appraisal district's contention that the purpose underlying the Legislature's acts was merely "to preserve and benefit the family farm." *Id.* (quoting *Alexander Ranch, Inc. v. Central Appraisal Dist.*, 733 S.W.2d 303, 307 (Tex. App.—Eastland 1987, writ ref'd n.r.e.)). Today, we reject the district's similar argument that "farm and ranch purposes" means only traditional farming and ranching. The use of the word "purposes" indicates that the Legislature can give productive capacity appraisal to property that, although not strictly a farm or ranch, is devoted to the furtherance of farming and ranching purposes so long as the primary intent of the provision, the preservation of open-space land, is not violated. "The universal rule of construction is that legislative and executive interpretations of the organic law, acquiesced in and long continued, ... are of great weight in determining the validity of any act, *and in case of ambiguity or doubt will be followed by the courts.*" *Mumme v. Marrs*, 120 Tex. 383, 40 S.W.2d 31, 35 (1931). In this case, the Legislature and political subdivisions have consistently interpreted "open-space land devoted to farm or ranch purposes" to include ecological laboratories. Indeed, the district appraised Nootsie's property based upon its productive capacity for eleven years before abruptly deciding that the statute was unconstitutional; the Travis County Appraisal District likewise has repeatedly reaffirmed its view that an ecological laboratory qualifies for productive capacity taxation.

To prevail on a facial constitutional challenge, the district bears the heavy burden of showing that every application of section 23.51(1) violates the Constitution. The district has not carried that burden. As stipulated in the trial court, one of the studies being conducted at the time of trial at the Nootsie ecological laboratory concerned the preservation and enhancement of native grasses for grazing purposes on ranch lands. Other examples of the uses of Nootsie's land include long-term studies of ecological succession, studies of canyon vegetation, studies of the effects of urbanization on the Edwards Plateau, soil sampling, and studies of meadow grasses. The record shows that the research performed on an ecological laboratory such as the one situated on Nootsie's land comports with article VIII, section 1–d–1(a) of the Texas Constitution.

## IV

We hold that the district had standing to file its counterclaim and that Nootsie waived its complaint about the district's capacity to file the counterclaim. We further hold that the Legislature did not exceed its constitutional mandate when it included ecological laboratories in the definition of qualified open-space land in Tax Code section 23.51(1). We therefore reverse the judgment of the court of appeals and render judgment that section 23.51(1) does not violate the Texas Constitution.

GONZALEZ, J., filed a concurring and dissenting opinion.

GONZALEZ, Justice, concurring and dissenting.

I concur with Part II of the Court's opinion concerning standing. However, for the reasons set forth in its opinion, I agree with the court of appeals that section 23.51(1) of the Texas Tax Code is unconstitutional. 905 S.W.2d 289.

As the Court acknowledges, article VIII, sections 1(a) and 1(b) of the Texas Constitu-

tion require that taxation shall be equal and uniform and that land shall be taxed in proportion to its value. In order to deviate from this norm, the Legislature submitted a constitutional amendment, article VIII, section 1–d–1, to the voters. According to the legislative history of this amendment, its purpose was to "[p]rovide for an alternative valuation of land devoted to farming, ranching, or timber production...." HOUSE COMM. ON CONSTITUTIONAL AMENDMENTS, BILL ANALYSIS, H.J.R. 1, § 2, 65th Leg., 2d C.S. (1978). The ballot submitted to the voters for approval described the proposed amendment as: "The constitutional amendment providing for tax relief for residential homesteads, elderly persons, disabled persons and agricultural land...." H.J.R. 1, CONFERENCE COMMITTEE REPORT, 65th Leg., 2d C.S. (1978). There was absolutely no mention of ecological laboratories in any promotional materials or in news stories or in editorials at the time the amendment's passage was being promoted. Voters were kept completely in the dark that property with only indirect agricultural purposes, such as ecological laboratories, would qualify for favorable tax treatment.

The Court is swayed by the fact that the appraisal district "appraised Nootsie's property based upon its productive capacity for eleven years before abruptly deciding that the statute was unconstitutional...." 925 S.W.2d 663. This fact is irrelevant to the question of whether the Legislature has authorized something which the Constitution prohibits. Equitable estoppel and laches have no bearing on the question.

In conclusion, the voters who ratified article VIII, section 1–d–1 of the Texas Constitution have been deceived. They were told one thing and the Legislature did another. The Legislature gave favorable tax treatment to a company that does not operate a farm or ranch of any kind in connection with its ecological laboratory, and raises no crops or animals for human or animal consumption. Is it any wonder that people become cynical and disillusioned with government?