**AFFIRM; and Opinion Filed June 30, 2016.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

_____

## No. 05-15-00653-CV
_____

**DEBORAH HUMPHREY, Appellant**
**V.**
**DAVID YANCEY AND NATIONWIDE SLATE, Appellees**

**On Appeal from the 191st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-13-07257**

## MEMORANDUM OPINION

Before Justices Bridges, Lang, and O'Neill[1]
Opinion by Justice O'Neill

Following a bench trial, the trial court rendered judgment in favor of appellee David Yancey on his claim for breach of contract. In five issues, appellant Deborah Humphrey challenges the trial court's denial of her motion to dismiss the case for want of prosecution, its refusal to exclude certain evidence regarding attorney's fees, its admission of certain of Yancey's exhibits, and its award of sanctions to appellee Nationwide Slate. Humphrey also challenges Yancey's standing to bring this contract claim against her in his individual capacity. For the reasons discussed below, we affirm the trial court's judgment.

---

[1] The Hon. Michael J. O'Neill, Justice, Court of Appeals. Fifth District of Texas at Dallas, Retired, sitting by assignment.

**Background[2]**

Humphrey and Yancey were old friends. When Humphrey decided to replace the roof on her large home, she contacted Yancey, a general contractor who builds, repairs, and remodels existing homes in the Dallas area. Humphrey asked Yancey to bid on a project to remove and replace the existing roof on her home. Yancey proceeded to solicit written bids from three different subcontractors, including Nationwide Slate, Clay Tile & Architectural Sheet Metal, Inc. d/b/a Nationwide Slate (Nationwide). Yancey and Nationwide had a long history of working together on various construction projects. Nationwide's total bid was $86,959.88.

Yancey and Humphrey met in person and reviewed the bid to replace the roof. Yancey normally operates his general contracting business as Onion Creek Farms, Inc. (Onion Creek). In this case, however, Yancey and Humphrey agreed on the following fee arrangement as a way to reduce the job cost to Humphrey: Yancey would supervise the job as the general contractor, individually without charging the usual and customary corporate mark-up for insurance, overhead or profit, and Humphrey would compensate Yancey for his services by paying him a supervision fee of $6,500. As long as Humphrey paid Nationwide directly, Yancey could avoid incurring insurance and other administrative costs and expenses and thereby reduce Humphrey's costs. Humphrey verbally accepted the fee arrangement proposed by Yancey. Yancey then signed and dated Nationwide's bids covering the main house and the carport, and returned the bids to Nationwide. Yancey signed individually: he did not include any title or office, and there was no mention of Onion Creek in the bid.

---

[2] Our factual background is drawn primarily from the trial court's findings of fact, which are not challenged in this appeal.

Shortly after Yancey and Humphrey agreed to the terms of the contract, work commenced at Humphrey's home to replace her roof. Yancey supervised the work throughout the duration of the job. Nationwide invoiced Yancey four times for the work, once in each month of February, March, April, and May. Nationwide addressed its invoices to Onion Creek instead of Yancey, because Nationwide's computerized invoicing was pre-programed and automatically populated Onion Creek's name and address on each invoice. Humphrey paid the February and March invoices, and—after some delay—the April invoice. Nationwide completed the roofing work in May and submitted its final invoice on May 8 for $21,197.92, the remaining balance of its total bid price of $86,959.88. Humphrey never paid the final invoice.

In June, Jamie Nicodemus was asked to inspect Humphrey's new roof, and to provide an opinion regarding the quality of it. Nicodemus told Humphrey she had "a good roof" and that Nationwide had done "a good, solid job." The trial court found Yancey fully performed his scope of work for Humphrey in a good and workmanlike manner. The court further found Nationwide fully performed its scope of work for Yancey in a good and workmanlike manner.

In early August 2012, when Humphrey had still not paid Nationwide's May 8 invoice, Yancey paid the final invoice in full by check drawn on Onion Creek's account. Yancey invoiced Humphrey for $36,503.55, consisting of the final invoice, plus a markup for insurance, overhead, and profit, plus the $6,500 supervision fee. Yancey presented his claim to Humphrey, but Humphrey has never tendered payment in any amount.

Yancey sued Humphrey, pleading breach of contract and, alternatively, quantum meruit. Shortly before trial was scheduled, Humphrey impleaded Nationwide, alleging that Nationwide failed to perform in a workmanlike manner in accordance with plans. During the bench trial, Humphrey nonsuited Nationwide. After trial, the court signed a judgment for Yancey for $36,503.55 plus attorney's fees.

Nationwide subsequently filed a motion for sanctions. The trial court granted the motion, awarding $5,000 in attorney's fees against Humphrey and her counsel and dismissing Humphrey's third party claim with prejudice.

Humphrey appeals.

### Yancey's Standing to Sue

At the outset, Humphrey challenges Yancey's standing to sue for the amounts allegedly due for the roofing work; Humphrey contends any claim belongs to Onion Creek. When Humphrey raised this issue below, the trial court concluded the question was one of capacity rather than standing. Issues of capacity must be raised by a verified pleading, and Humphrey failed to file such a pleading. Thus, the trial court concluded Humphrey had waived that complaint.

A plaintiff must have both standing to sue and capacity to sue. *Austin Nursing Ctr., Inc. v. Lovato,* 171 S.W.3d 845, 848 (Tex. 2005). The supreme court has distinguished these concepts, stating: "A plaintiff has *standing* when it is personally aggrieved, regardless of whether it is acting with legal authority; a party has *capacity* when it has the legal authority to act, regardless of whether it has a justiciable interest in the controversy." *Id.* at 848–49 (citing *Nootsie, Ltd. v. Williamson Cty. Appraisal Dist.,* 925 S.W.2d 659, 661 (Tex. 1996)). Because standing is a component of subject matter jurisdiction, it cannot be waived. *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993). Capacity, on the other hand, is waived unless raised by a verified pleading in the trial court. *Austin Nursing Ctr., Inc.*, 171 S.W.3d at 849.

Humphrey argues Yancey was not personally aggrieved by her refusal to pay the final amount invoiced for the roofing project; she contends that if anyone was aggrieved, it was Yancey's corporation, Onion Creek. She points to the fact that Nationwide addressed its

invoices to Onion Creek rather than Yancey, but the trial court found this was a matter of Nationwide's computerized invoicing system and did not reflect the corporation's involvement in the roofing project. Likewise, the final invoice sent from Yancey to Humphrey was printed with Onion Creek's computerized program.

The critical factor in the standing issue, though, is that Humphrey made her agreement with Yancey, not with Onion Creek. As part of that agreement, Yancey agreed to act as the general contractor individually, rather than through his corporate entity, in order to save Humphrey the added expense of corporate mark-ups for insurance and overhead. Humphrey agreed to pay Nationwide directly when invoiced and to pay Yancey—individually—a supervision fee of $6500 for the job. However, because Yancey had accepted Nationwide's proposal individually, he was bound to pay Nationwide's final invoice when Humphrey refused to do so. His final invoice to Humphrey included the amount he paid to Nationwide and the $6500 owed to him individually. Yancey was personally aggrieved when Humphrey failed to pay as she had promised. We conclude Yancey had standing to sue Humphrey for breach of their contract. *See Austin Nursing Ctr., Inc.*, 171 S.W.3d at 848–49.

Humphrey argues further that because Yancey paid Nationwide what Humphrey owed out of Onion Creek's funds, the corporation was the proper party in this case. The question of Yancey's legal authority to bring this suit is one of capacity. *See id.* The trial court correctly concluded that Humphrey waived any capacity complaint by failing to file a verified denial. *See id.* at 849.[3]

We decide Humphrey's challenge to Yancey's standing against her.

---

[3] Humphrey relies upon our opinion in *Nauslar v. Coors Brewing Co.*, 170 S.W.3d 242 (Tex. App.—Dallas 2005, no pet.), in which we held a partner lacks standing to assert a claim for injury to the partnership; when the partnership's right was violated, standing belonged to the entity alone, even if an individual partner suffered harm indirectly. *Id.* at 250–51. In this case, Yancey possesses the primary legal right violated: the breach of his contract with Humphrey. Thus, he has the justiciable interest required for standing. *See id.* at 251.

## The Motion to Dismiss For Want of Prosecution

In her first issue, Humphrey contends the trial court erroneously denied her Motion to Dismiss For Want of Prosecution. The motion relied on rule 169, which provides expedited procedures for certain litigation in which the claimant seeks monetary relief of $100,000 or less. TEX. R. CIV. P. 169(a)(1). The rule imposes strict procedural limitations upon cases to which it applies:

> On any party's request, the court must set the case for a trial date that is within 90 days after the discovery period in Rule 190.2(b)(1) ends. The court may continue the case twice, not to exceed a total of 60 days.

TEX. R. CIV. P. 169(d)(2). Humphrey argued the trial court did not set the trial for a date within 90 days of the end of the discovery period. Moreover, according to Humphrey, the trial court granted two continuances that did not comply with the 60-day-total allowed by the rule. Thus, she argued, the trial court should grant her motion and dismiss the case for want of prosecution.

The trial court denied Humphrey's motion to dismiss in a detailed order. The order identifies four bases for the court's ruling:

> (1) rule 169 contemplates a request for a timely trial setting from any party; neither party made such a request in this case;
>
> (2) Humphrey specifically requested the second continuance herself due to her counsel's personal issues and then joined a new party less than thirty days before the trial date; she thus waived the right to enforce the rule's deadlines;
>
> (3) the ultimate ability to set a trial date rests with the trial court, not the parties; and
>
> (4) the rules of civil procedure do not provide for dismissal as an appropriate remedy for missing the rule's deadlines.

Humphrey challenges each of these bases. We conclude the trial court's second ground is sufficient to support its ruling. In its discussion of waiver, the trial court pointed out that Humphrey "specifically requested" the second continuance granted by the trial court. The record also indicates the first request for a continuance was not opposed by Humphrey. Indeed, the

–6–

verified first motion for continuance informed the court a continuance was necessary because Humphrey was out of the country and her attorney was unable to provide dates when she could be deposed. Then, as the trial court noted, Humphrey joined a new party within thirty days of trial, threatening to delay trial once again. A party may not assign error to the action of a trial court when the party requested the specific action taken. *See Affiliated Pathologists, P.A. v. McKee*, 261 S.W.3d 874, 878 (Tex. App.—Dallas 2008, no pet.) ("A party that asks for a certain type of relief cannot complain on appeal if that relief is granted."). Stated differently, after engendering delay herself, Humphrey has waived any right to complain of delay.

We conclude the trial court did not err in denying the motion to dismiss. We overrule Humphrey's first issue.

In her second issue, Humphrey argues her case should not only have been dismissed, it should have been dismissed with prejudice. Our conclusion that the trial court did not err in denying the motion renders this issue moot. However, if we were to address this issue, we would acknowledge the settled rule that a dismissal for want of prosecution is without prejudice and constitutes no bar to refiling. *See Rizk v. Mayad,* 603 S.W.2d 773, 775 (Tex. 1980); *Christensen v. Chase Bank USA, N.A.*, 304 S.W.3d 548, 554 (Tex. App.—Dallas 2009, pet. denied). We would decline Humphrey's request to make an exception to that rule without clear direction from the Legislature.

We overrule Humphrey's second issue as well.

### Evidence of Attorney's Fees

In her third issue, Humphrey argues the trial court abused its discretion by refusing to exclude a cumulative bill identifying all the attorney's fees Yancey incurred prosecuting this case (Exhibit 12). Humphrey objected when Exhibit 12 was offered because it was not produced until the day of trial, immediately before the attorney's fee testimony was offered by Yancey's

counsel, William Ackerman. Ackerman's testimony established that Exhibit 12 was created the day before it was produced. The trial court overruled Humphrey's objection, stating Yancey "probably should have provided it yesterday, not today," but finding no prejudice or harm in the one-day delay.[4] We review a trial court's decision to admit evidence for an abuse of discretion. *In re J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005).

Humphrey argues Yancey had a continuing duty to supplement his response to her discovery request concerning information reviewed by expert witnesses. *See* TEX. R. CIV. P. 193.5(a). We agree. She also argues that the remedy for a violation of this duty is exclusion of the evidence that was not timely disclosed. *See* TEX. R. CIV. P. 193.6(a). We agree this is the general rule. However, rule 193.6 provides exceptions to the exclusionary rule if the trial court finds: (1) good cause for the failure to supplement, (2) no unfair surprise to the objecting party, or (3) no unfair prejudice to the objecting party. TEX. R. CIV. P. 193.6(a)(1), (2). In this case, the trial court specifically found the failure to supplement did not cause prejudice to Humphrey.

A finding of no prejudice must be supported by the record. TEX. R. CIV. P. 193.6(b). Humphrey does not address the issue of prejudice, but we conclude the record supports the trial court's finding. Counsel for Humphrey did not ask the court for a recess or a continuance to review the bill. He had the opportunity to cross examine Ackerman, but he did not ask the witness questions about any specific item in the bill, or about the rate charged, or about the total amount of the bill. Indeed, the only questions counsel asked about the bill related to his argument concerning expedited discovery, i.e., showing that most of the discovery reflected in the bill was conducted outside the deadline set for cases proceeding under rule 169. To that extent, counsel actually used the bill to support one of his arguments below and in this Court. At

---

[4] In the course of the discussion following Humphrey's objection, the trial judge made several comments concerning the nature of attorney's fee testimony generally, whether this witness had used the bill to prepare for his testimony, and the absence of a specific discovery request for documents concerning attorney's fees. However, our review of the record establishes the judge's final ruling was, as quoted above, that Yancey should have produced the bill the day before, but she did not "see any prejudice or harm from this."

any rate, we see no evidence that the failure to produce the bill to Humphrey the day before trial caused her any prejudice.

We discern no abuse of discretion in the trial court's admission of Exhibit 12. We overrule Humphrey's third issue.

**The Parties' Agreement and Invoices**

In her fourth issue, Humphrey challenges the trial court's admission of seven exhibits offered into evidence at trial through Yancey's testimony. Exhibits 1 and 2 are the proposals offered by subcontractor Nationwide Slate and accepted by Yancey; Exhibits 3 through 7 are the invoices issued for payment during the roofing project. Humphrey objected to each of these documents at trial as hearsay. Again, we review the trial court's decision to admit evidence for an abuse of discretion. *In re J.P.B.*, 180 S.W.3d 575.

*The Yancey-Nationwide Agreement*

Exhibit 1 is the original proposal Nationwide made to Yancey in response to Yancey's requests for bids for replacing the roof on Humphrey's house. Exhibit 2 incorporates the original proposal and adds terms for replacing the roof on Humphrey's carport as well.

Hearsay is defined as an out-of-court statement offered in evidence to prove the truth of the matter asserted. TEX. R. EVID. 801(c). However, if the mere making of the out-of-court statement—regardless of its truthfulness—has legal significance, then evidence of the statement is not hearsay; it is offered to show it was made, not to prove the truth of the matter asserted. *Case Corp. v. Hi-Class Bus. Sys. of Am., Inc.*, 184 S.W.3d 760, 782 (Tex. App.—Dallas 2005, pet. denied). A statement that makes up the parties' contract is an operative fact, a necessary part of a cause of action, and is not hearsay. *See Okon v. Levy*, 612 S.W.2d 938, 942 (Tex. Civ. App.—Dallas 1981, writ ref'd n.r.e.) ("This evidence was proof of what the contract of the parties was and thus, was a necessary part of the cause of action.").

–9–

We conclude Exhibits 1 and 2 were statements comprising the contract between Yancey and Nationwide; they were operative facts, not hearsay. The trial court did not abuse its discretion in admitting the exhibits.

*The Invoices*

Exhibits 3 through 7 are the invoices from Nationwide and Yancey to Humphrey, identifying work done and seeking payment for that work according to the parties' agreements. Humphrey argues that Yancey's testimony was insufficient to except these documents from the hearsay ban as records of a regularly conducted activity, or business records. *See* TEX. R. EVID. 803(6). Specifically, Humphrey objects to an absence of testimony concerning the creation of these documents: when they were made and whether they were made in the ordinary course of business.

A document created by one business may become a record of a second business if the second business determines the accuracy of the information generated by the first business. *Cockrell v. Republic Mortg. Ins. Co.*, 817 S.W.2d 106, 112 (Tex. App.—Dallas 1991, no writ). Although Yancey could not testify to the creation of Nationwide's invoices, it was sufficient that he testified he kept those invoices in the course of his own business; nothing in the record concerning the generation of these records indicates a lack of trustworthiness. *See id.* at 113 (subcontractor's invoices became integral part of contractor's own records). We conclude Nationwide's invoices were properly excepted from the hearsay rule. The trial court did not abuse its discretion in admitting Exhibits 3 through 6.

Exhibit 7 is Yancey's invoice to Humphrey, sent after she refused to pay Nationwide and Yancey paid on her behalf. The invoice was not offered to prove the truth of any matter asserted within it; it was offered, instead, to prove that Yancey made a demand of payment from Humphrey. Thus—just as Exhibits 1 and 2 represent the legally operative fact of the parties'

contract—Exhibit 7 represents the legally operative fact of demand, a necessary part of Yancey's breach of contract case. *See Case Corp.*, 184 S.W.3d at 782. The trial court did not abuse its discretion in admitting Exhibit 7.

Humphrey also argues that—absent the admission of Exhibits 1 through 7—there is insufficient evidence of an agreement or of payment in this case. Because we have concluded all the exhibits were properly admitted, Humphrey's sufficiency argument is moot. We overrule Humphrey's fourth issue.

### Sanctions Against Humphrey

In her fifth issue, Humphrey argues the trial court abused its discretion by granting sanctions against her, in favor of Nationwide. On November 18, 2014, five days after the trial court heard and denied Humphrey's motion to dismiss for want of prosecution, Humphrey filed her original third-party petition against Nationwide; she did not seek leave of court to do so. By this point in the litigation, the court had specially set trial for December 15. Nationwide filed its answer as trial began, and Humphrey's counsel moved for a continuance to conduct discovery against Nationwide.[5] The trial court denied the continuance when Nationwide announced ready. Humphrey then non-suited the third party claim against Nationwide.

When trial was over, Nationwide moved for sanctions against Humphrey and her attorney, alleging Humphrey's third-party claim was groundless and filed for purposes of delay and harassment. The trial court granted Nationwide's motion, finding that the allegation that Nationwide had failed to perform in a good and workmanlike manner was groundless and that Humphrey's filing of the third-party petition within thirty days of trial was for purposes of harassment and delay. The court awarded Nationwide attorney's fees in the amount of $5000 and dismissed the third-party claim with prejudice.

---

[5] Counsel also sought the continuance because he had not been able to contact Humphrey; he believed she was out of the country.

Humphrey argues in this Court that her attorney made appropriate inquiry before filing suit against Nationwide. Her attorney testified at the sanctions hearing that two contractors told him they had inspected the roof and it had problems.[6] Humphrey also argues the third-party petition was timely filed, and that she only took the non-suit after she was denied discovery from Nationwide. But Jamie Nicodemus also testified at the hearing on sanctions that he was asked to inspect Humphrey's roof to give his "honest opinion on the job." Other than a "[c]ouple of little cosmetic pieces, . . . [i]t was a good solid job." He told Humphrey following his inspection that she had "a good roof."

We review a trial court's ruling on a motion for sanctions under an abuse of discretion standard. *Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex. 2004). Rule 13 provides that pleadings that are groundless and in bad faith or intended to harass are sanctionable:

> The signatures of attorneys or parties constitute a certificate by them that they have read the pleading, motion, or other paper; that to the best of their knowledge, information, and belief formed after reasonable inquiry the instrument is not groundless and brought in bad faith or groundless and brought for the purpose of harassment.

TEX. R. CIV. P. 13. The rule defines "groundless" to mean having "no basis in law or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law." *Id.* Likewise, chapter 10 of the civil practice and remedies code authorizes sanctions for pleadings that are "presented for any improper purpose, including to harass or to cause unnecessary delay or needless increase in the cost of litigation." TEX. CIV. PRAC. & REM. CODE ANN. §§ 10.001(1), 10.002 (West 2002). We will reverse the trial court's assessment of sanctions only if the trial court acted without reference to any guiding rules and principles, such that its ruling was arbitrary or unreasonable. *Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97

---

[6] Neither of those contractors testified at trial or at the sanctions hearing.

(Tex. 2009). The trial court does not abuse its discretion if it bases its decision on conflicting evidence and some evidence supports its decision. *Id.*

In this case, the trial court heard testimony that the roof had been inspected by Nicodemus, a prominent roofing contractor, who informed Humphrey that she had "a good roof" with only a couple cosmetic issues. Undisputed testimony established the cosmetic issues were fixed. However, two and a half years later, Humphrey sued Nationwide alleging it had failed to perform the roofing job in a workmanlike manner. Thus, there was some evidence that Humphrey's counsel failed to investigate this claim or ignored evidence contrary to the claim.

Moreover, the timing of the third-party petition's filing—immediately after the trial court denied Humphrey's motion to dismiss and within thirty days of trial—could have reasonably been viewed by the trial court as intended to cause delay. Indeed, as trial began Humphrey offered a prepared motion for continuance, purportedly urged so that she could conduct discovery with Nationwide.

We conclude that some evidence supports the trial court's sanctions order. *See id.* Accordingly, we overrule Humphrey's fifth issue.

## Conclusion

We have decided Humphrey's issues against her. We affirm the trial court's judgment.


/Michael J. O'Neill/
MICHAEL J. O'NEILL
JUSTICE, ASSIGNED

150653F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

DEBORAH HUMPHREY, Appellant

No. 05-15-00653-CV     V.

DAVID YANCEY AND NATIONWIDE
SLATE, Appellees

On Appeal from the 191st Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-13-07257.
Opinion delivered by Justice O'Neill,
Justices Bridges and Lang participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee David Yancey and Nationwide Slate recover their costs of this appeal from appellant Deborah Humphrey.

Judgment entered this 30th day of June, 2016.