# Supreme Court of Texas

No. 24-1060

The State of Texas,
*Petitioner*,

v.

City of McAllen, et al.,
*Respondents*

On Petition for Review from the
Court of Appeals for the Third District of Texas

**Argued March 5, 2026**

CHIEF JUSTICE BLACKLOCK delivered the opinion of the Court.

Justice Hawkins did not participate in the decision.

In 2017 and 2019, the Legislature reduced the amount of money cities can charge telecommunications companies to run their equipment on public property alongside city streets.[1]  Displeased with the lost

[1] Act of May 25, 2017, 85th Leg., R.S., ch. 591, 2017 Tex. Gen. Laws 1598 (codified at TEX. LOC. GOV'T CODE §§ 284.001–.304); Act of May 21, 2019, 86th Leg., R.S., ch. 980, 2019 Tex. Gen. Laws 2819 (codified at TEX. LOC. GOV'T CODE § 283.051(d)–(f) and TEX. UTIL. CODE § 66.005(d)–(f)).

revenue, a group of cities banded together to ask the courts to block the Legislature's action. The cities claimed that charging less than market rates for the use of public property amounted to an unconstitutional gift to the telecom companies, even in this heavily regulated industry. They sought to vindicate this theory by suing a lone defendant, the State of Texas. Their lawsuit, which began in 2017, asks for a declaration that the statutorily reduced rates violate the Texas Constitution's Gift Clauses. *See* TEX. CONST. art. III, § 52(a); *id.* art. XI, § 3. The district court issued the requested declaration in part. The court of appeals went further, essentially agreeing with the cities about the Gift Clauses. 706 S.W.3d 503 (Tex. App.—Austin 2024).

We vacate the lower courts' judgments as well as the court of appeals' opinion, which will have no continuing precedential effect with respect to the Gift Clauses. We do so without addressing the Gift Clauses at all, however, because this lawsuit suffers from a basic defect that has deprived the courts of jurisdiction from the beginning: The cities sued the wrong defendant.

Naming the correct defendant is essential when invoking the courts' jurisdiction because the judicial power is the power to issue judgments redressing injuries traceable to the defendant. *See Heckman v. Williamson County*, 369 S.W.3d 137, 150, 154 (Tex. 2012). As we have said before, "the State is not automatically a proper defendant in a suit challenging the constitutionality of a statute merely because the Legislature enacted it." *Abbott v. Mexican Am. Legis. Caucus*, 647 S.W.3d 681, 697 (Tex. 2022) (*MALC*). That is because the presence of the challenged law on the books is not a legally cognizable injury

inflicted on the affected plaintiff by the Legislature or by the disembodied "State of Texas." *Id.* at 698. Nor does a judgment against the State of Texas necessarily redress any real-world injury to the plaintiff caused by the statute. For these reasons, among others, a plaintiff in constitutional litigation who seeks a "global injunction by naming the State generally . . . . finds no support in Texas law." *State v. Zurawski*, 690 S.W.3d 644, 659 (Tex. 2024).

Instead, a plaintiff seeking to sue the state government over an allegedly unconstitutional law must at least "identify and name the officer or agency with authority to enforce the challenged law" so that a court may direct its judgment at the person or entity whose actions or threatened actions have caused the complained-of injury. *Id.* at 659–60.[2] In constitutional litigation, as in all litigation, the "required showing of a causal connection between the plaintiff's injury and the defendant's conduct serves as a means of identifying the proper defendants." *Meyers v. JDC/Firethorne, Ltd.*, 548 S.W.3d 477, 485 (Tex. 2018).

"Suits against the State do not sweep in every officer operating under the State's authority . . . ." *Zurawski*, 690 S.W.3d at 659. If it were otherwise, there would never be a need to analyze the proper-defendant question in constitutional litigation because any

---

[2] *See also Robbins v. Limestone County*, 268 S.W. 915, 917 (Tex. 1925) (finding "no fault with the parties defendant" because a plaintiff sued "members of the state highway department" and did "not allege an action against the state"); *MALC*, 647 S.W.3d at 698 ("Declaratory-judgment claims challenging the validity of a statute may be brought against the relevant governmental entity.").

plaintiff complaining that a statute is unconstitutional could just sue the State itself. But we have often analyzed that question, and for good reason.[3] Naming the "State of Texas" as an all-purpose defendant is not a cheat code for bypassing the requirement, incumbent on any plaintiff in any context, to seek a judgment against the party whose actions are the cause of the alleged injury. Injury arises from the law's application to, or enforcement against, the plaintiff *by someone*—not from the mere existence or enactment of the law. The State of Texas can act only through people and agencies, who may be sued when their actual or threatened application of the law causes injury, subject of course to limits such as sovereign immunity. *MALC*, 647 S.W.3d at 696–98.

The first problem, therefore, with the cities' choice of defendant is their failure to even attempt to identify the state officer or agency responsible for the injury they attribute to the State. An additional problem is that it is unclear, in this case, whether anyone associated with the State of Texas is the source of the cities' injury. It is therefore unclear whether any state officer or agency fits the proper-defendant bill. As far as we know, no officer or agency has taken or threatened any adverse action against the cities in connection with the challenged statutes. Nor do the cities allege that anyone in state government is likely to do so. It is nevertheless possible that the Public Utility Commission or its officers could be proper defendants in a suit by the

---

[3] *See, e.g.*, *Zurawski*, 690 S.W.3d at 657–60; *Abbott v. Harris County*, 672 S.W.3d 1, 8–9 (Tex. 2023); *In re State*, 682 S.W.3d 890, 893 n.2 (Tex. 2023); *MALC*, 647 S.W.3d at 696–98; *Whole Woman's Health v. Jackson*, 642 S.W.3d 569, 575–83 (Tex. 2022); *In re Abbott*, 601 S.W.3d 802, 812 (Tex. 2020); *Robbins*, 268 S.W. at 917.

cities alleging the unconstitutionality of these statutes. That is not the question before us, and we express no view on it.

The absence of a proper state defendant in a dispute about the constitutionality of a statute would not be unusual. Statutes frequently govern the behavior of non-state actors without any mechanism for enforcement by an officer or agency of the government. *See, e.g.*, *California v. Texas*, 593 U.S. 659, 669 (2021) (a statute without means of governmental enforcement had "no possible Government action that [could be] causally connected to the plaintiffs' injury"). The constitutionality of such statutes is often questioned in litigation between the non-state parties affected. The State has a statutory right to participate in that litigation if it chooses to do so, TEX. GOV'T CODE § 402.010; TEX. CIV. PRAC. & REM. CODE § 37.006(b), but it may often be the case that neither the State nor any of its officers or agencies is a proper defendant even though a plaintiff claims that a statute affecting its rights is unconstitutional.[4]

_____

[4] The cities rely heavily on our decision in *Nootsie, Ltd. v. Williamson Cnty. Appraisal Dist.*, 925 S.W.2d 659 (Tex. 1996). It offers little help. Nootsie sued the Appraisal District for over-appraising its property in violation of a tax statute, and the District responded that the statute was unconstitutional. *Id.* at 661. We observed that the District "is charged with implementing a statute that it believes violates the Texas Constitution," and we held that this "interest provide[d] the district with a sufficient stake in the controversy to assure the presence of an actual controversy that the declaration sought will resolve." *Id.* at 662. We thus held that the District was a proper party to raise a constitutional challenge to the statute. *Id.* at 663. The same is no doubt true of the cities here, but that fact cannot support the weight the cities ask it to bear. There is little question the cities are proper *plaintiffs* because their financial interest in the disputed payments gives them "a sufficient stake in the controversy." *Id.* at 662. But the question at hand is not about the proper

As always, the proper defendant is the party with whom the plaintiff has a concrete, real-world dispute. *See MALC*, 647 S.W.3d at 690. In this case, the dispute is over how much a city will charge a telecom company to use a public right of way. This is an eminently justiciable monetary dispute between the city and the company. The cities want the telecom companies to pay a higher rate than the rate set by the Legislature, an outcome the cities believe to be compelled by the Gift Clauses. The telecom companies presumably believe the lower rate is not a Gift Clause problem. They would surely rely on the statute and refuse to pay the higher rate desired by the cities. In other words, the parties to a real-estate transaction disagree about the law governing the transaction. Courts are well-acquainted with such cases. The nature of so familiar a dispute—and therefore the proper alignment of the parties

---

plaintiff. The question is about the proper defendant, a question about which *Nootsie* says very little.

We described the Attorney General's participation in *Nootsie*, perhaps somewhat imprecisely, as having been joined by the District as a third-party defendant. *Id.* at 661. What actually happened in *Nootsie* was that the State chose to get involved in response to the statutorily required notice of a constitutional challenge—just as the State could choose to get involved in litigation between the cities and the telecom companies over how much money one owes the other. *See Williamson Cnty. Appraisal Dist. v. Nootsie, Ltd.*, 905 S.W.2d 289, 290 (Tex. App.—Austin 1995) ("After proper service of notice [pursuant to TEX. CIV. PRAC. & REM. CODE § 37.006(b)], the attorney general of Texas intervened and defended the constitutionality of section 23.51(1)."). *Nootsie* holds that the Appraisal District's constitutional challenge was properly raised *within a case between the District and Nootsie about Nootsie's taxes*. 925 S.W.2d at 662. *Nootsie* comes nowhere close to saying that the Appraisal District could have sued the State of Texas directly, bypassing Nootsie and all other taxpayers, to establish its right, in every taxpayer's case, to disregard a statute as unconstitutional. That proposition, for which the cities argue, finds no support in this Court's precedent.

6

to it if they must pursue litigation—does not change because one party's view of the law is that a statute conflicts with the constitution.[5]

Insisting on the proper defendant is not an academic exercise. Any judgment obtained will bind only the parties. *Blankenship v. Wartelsky*, 6 S.W. 140, 142 (Tex. 1887) ("None but parties or privies are bound by judgments."); TEX. CIV. PRAC. & REM. CODE § 37.006(a) (declaratory judgments do "not prejudice the rights of a person not a party to the proceeding"). If the wrong parties are before the court, the judgment's binding force will not resolve the dispute in the real world. Here, if the cities want the courts to bind the telecom companies to pay the higher rates, they may consider seeking a judgment against the companies. A judgment against the "State of Texas" declaring the lower rates to be unconstitutional gifts would not require the non-party companies to do or refrain from doing anything at all. It might suggest to the companies that continuing to ask the cities to follow the statutes is unlikely to be worth the trouble because the courts will probably side with the cities. But the companies would be well within their rights to ignore a sweeping declaration against the "State of Texas" in a lawsuit to which they were not parties and to insist on a judgment binding on them before they assent to the higher rates sought by the cities.

---

[5] Whatever the Public Utility Commission's role, we do not hesitate to observe that a dispute about how much money the telecom companies must pay the cities may be litigated with the telecom companies and the cities on opposite sides of the "v." Unsurprisingly, litigation between cities and telecom providers over various rates and fees is not uncommon. *See, e.g.*, *AT&T Commc'ns of Sw., Inc. v. City of Austin*, 235 F.3d 241, 243 (5th Cir. 2000); *City of Houston v. Zayo Grp., LLC*, No. 4:23-CV-2169, 2025 WL 3050174 (S.D. Tex. July 24, 2025); *Comcast Cable of Plano, Inc. v. City of Plano*, 315 S.W.3d 673, 675 (Tex. App.—Dallas 2010, no pet.).

7

The judgment sought in this lawsuit would therefore not redress the cities' injury or resolve the real-world dispute animating this litigation. It would merely declare the position of the judiciary on the legal question the cities raise. The cities would no doubt like to have such a judgment, assuming it goes their way. But that is not what courts are for. The cities' desire for a judicial precedent vindicating their view of the constitution does not give the courts jurisdiction to issue declaratory judgments against the "State of Texas" opining on the meaning of the constitution.

Nor can the Uniform Declaratory Judgments Act "license litigants to fish in judicial ponds for legal advice." *Cal. Prods., Inc. v. Puretex Lemon Juice, Inc.*, 334 S.W.2d 780, 781 (Tex. 1960) (citation modified). Courts do not exist to make precedent. Courts exist to resolve concrete, real-world disputes. Thus, our declaratory-judgment power extends only to a "real controversy between the parties, which will be actually determined by the judicial declaration sought." *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993) (citation modified). Like any other judgment, a declaratory judgment must redress concrete injuries traceable to the defendant. *See Heckman*, 369 S.W.3d at 154. Otherwise, it is outside the courts' jurisdiction.

Whatever indirect effect our precedent-setting opinions may have on the behavior of non-parties, our jurisdiction—the judicial power entrusted to us by the Texas Constitution—is to issue judgments that resolve concrete disputes by binding the parties. *See* TEX. CONST. art. V, § 1. Because this case presents no opportunity to issue such a judgment, it lies beyond our jurisdiction.

* * *

For the foreging reasons, this case must be dismissed for lack of jurisdiction. Perhaps, if the case is revived in a justiciable posture, some of the time and effort expended over the last nine years will not have gone entirely to waste. Wasteful or not, courts must always dismiss a case to which the judicial power does not extend, no matter the stage of the litigation at which the defect is discovered.[6] *See, e.g., Rattray v. City of Brownsville*, 662 S.W.3d 860, 868–69 (Tex. 2023); *Fin. Comm'n of Tex. v. Norwood*, 418 S.W.3d 566, 578 (Tex. 2013).

The judgments of the lower courts are vacated, and the case is dismissed for lack of jurisdiction.

James D. Blacklock
Chief Justice

**OPINION DELIVERED:** June 5, 2026

---

[6] The cities argue that the State judicially admitted it is a proper defendant, thus waiving any jurisdictional defect. While such admissions may make for poor practice, they have no effect on a court's jurisdiction, which the court is obligated to consider *sua sponte* no matter what the parties say. *Clint Indep. Sch. Dist. v. Marquez*, 487 S.W.3d 538, 558 (Tex. 2016) (parties cannot confer subject-matter jurisdiction through judicial admission or waiver).