**Affirmed and Plurality, Concurring, and Dissenting Opinions filed December 31, 2020.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-19-00488-CV

---

### GENSETIX, INC., Appellant

### V.

### BAYLOR COLLEGE OF MEDICINE, DIAKONOS RESEARCH, LTD., AND WILLIAM K. DECKER, Appellees

---

**On Appeal from the 129th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2019-02003**

---

## PLURALITY  OPINION

Appellant Gensetix, Inc. appeals from the trial court's order dismissing its claims against appellees Baylor College of Medicine ("BCM"), Diakonos Research, Ltd., and William K. Decker (collectively "the Decker Parties"). The trial court dismissed Gensetix's claims pursuant to the Texas Citizens Participation Act ("TCPA"). *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.001, et. seq. In three issues on appeal Gensetix argues (1) the TCPA does not apply to its claims; (2) if the TCPA

applies Gensetix established by clear and specific evidence a prima facie case for each element of the claims in question; and (3) the TCPA is unconstitutional. We conclude that the TCPA applies to Gensetix's claims and that Gensetix failed to establish by clear and specific evidence a prima facie case for each element of its claims. We further conclude that the fee-shifting provisions of the TCPA do not violate the Texas Constitution or the First and Fourteenth Amendments to the United States Constitution. We affirm the trial court's dismissal of Gensetix's claims.

## BACKGROUND

Plaintiff Gensetix alleged that Defendant Dr. William Decker invented methods of modifying patients' immune systems to kill cancer cells during Decker's employment at The University of Texas MD Anderson Cancer Center ("UT"). UT retained title to the patents as Decker's employer. According to Gensetix's original petition, the live pleading at the time of dismissal, UT granted Alex Mirrow, a non-party to this litigation, an exclusive license to commercialize the patented method invented by Decker. Mirrow subsequently assigned his rights in the licensed method to Gensetix. The parties referred to this assignment of rights as the "UT-Gensetix License."

Gensetix alleged that although Decker left UT and retained no rights in the patents, he continued to practice the patented technology at BCM. Gensetix alleged that it contacted Decker and BCM seeking to assert its patent rights and to acquire any intellectual property rights Decker and BCM claimed to own based on improvements or new discoveries from their use of the patented methods. Gensetix alleged that BCM was receptive to the idea of assigning these rights; accordingly, Gensetix sought financial backing from Fannin Innovation.

BCM eventually assigned rights for any developments allegedly based on the patented methods to Diakonos. Diakonos offered to sublicense the patents from

2

Gensetix, but Gensetix declined.

## I.     Gensetix's Claims

Gensetix filed the present suit naming Decker, Diakonos, and BCM as defendants and asserting the following claims against Decker:

***Breach of contract–non-disclosure agreement***. Gensetix alleged that it entered into a non-disclosure agreement with Decker, which, according to Gensetix's pleading, prevented Decker from disclosing any Gensetix confidential information to third parties. Gensetix alleged that Decker disclosed confidential information to Dan Faust of Diakonos and that Faust used the confidential information to negotiate with BCM for rights to intellectual property arising from Decker's lab at BCM. Gensetix alleged that it suffered harm from Decker's action because Diakonos was "developing commercial treatments for the benefit of Diakonos, Decker, and BCM instead of for the benefit of Gensetix and UT." Gensetix further alleged it suffered damages "in the form of additional out-of-pocket costs, lost intellectual property licenses, lost revenue, and lost goodwill."

***Breach of contract–cooperation agreement***. Gensetix alleged that it, as part of a "handshake agreement," paid Decker in exchange for Decker's promise to "commercialize the technology on behalf of Gensetix." Gensetix alleged that Decker's breach caused it significant harm because it could not reap the benefits of the "UT-Gensetix License."

***Promissory Estoppel***. Gensetix alleged that in reliance on the "handshake agreement" Gensetix paid Decker to "develop a commercial product and 'refrain [] from any activities that might not be in [Gensetix's] best interests[.]'" As damages Gensetix alleged it suffered out-of-pocket expenses paid in reliance on Decker's promises.

3

***Tortious interference–Gensetix/BCM deal***. Gensetix alleged that Decker interfered with Gensetix's reasonable expectation of developing a business relationship with Fannin Innovation. Gensetix further alleged that Decker interfered with Gensetix's ability to profit from Decker's work at BCM. Gensetix alleged damages in the form of "out-of-pocket costs, lost revenue, and goodwill."

Gensetix asserted the following claims against Decker, Diakonos, and BCM:

***Tortious interference with UT-Gensetix License***. Gensetix alleged it had a licensing agreement with UT to license Decker's intellectual property and that BCM and Diakonos interfered with that prospective business relationship. Gensetix alleged damages in the form of "making it more expensive, burdensome, and difficult for Gensetix to perform its existing contract with UT[.]"

***Civil conspiracy***. Gensetix alleged that Decker, Diakonos, and BCM conspired to interfere with Gensetix's contract with UT.

## II.    Motions to Dismiss

Decker, Diakonos, and BCM answered and filed motions to dismiss Gensetix's claims under the TCPA, alleging that (1) Gensetix's claims were based on, related to, or were in response to their exercise of the right to association, petition, or to free speech; and (2) Gensetix had not and could not establish by clear and specific evidence a prima facie case for each essential element of its claims.

In Decker's motion he alleged that Gensetix's action implicated his right to free speech and right of association as defined by the TCPA. Decker argued that Gensetix's central allegation was that Decker pursued commercialization of his inventions with Diakonos and BCM rather than Gensetix.

In BCM's motion it alleged that Gensetix's action implicated its right to petition the United States Patent Office in addition to its right of association, and

4

right to free speech as defined by the TCPA. BCM further argued that Gensetix could not establish by clear and specific evidence a prima facie case of tortious interference because Gensetix had not pleaded any facts to support that BCM willfully and intentionally interfered with a contract or that any interference proximately caused Gensetix's injuries. BCM further argued that Gensetix's civil conspiracy claim failed for the same reasons. Diakonos joined both Decker and BCM's motions.

## III.    Gensetix's Response

Gensetix responded to the motions to dismiss arguing that (1) no defendant had shown that Gensetix's action implicated its rights to petition, association, or free speech under the TCPA; and (2) Gensetix had established a prima facie case for each of its claims. In support of its response Gensetix attached the declaration of Rita Mousa, manager of Gensetix.

In Mousa's declaration she averred that UT executed a license agreement with Mirrow granting Mirrow rights in certain patents involving cancer treatment arising from Decker's research. Mirrow subsequently assigned those rights to Gensetix. Gensetix entered into negotiations with BCM about funding, licensing, and eventually bringing to market additional intellectual property largely based on Decker's ongoing research. Mousa stated that, anticipating an agreement with BCM, Gensetix began discussions with outside entities with which it might partner for funding and investment in that development. One of the entities was Fannin Innovation. According to Mousa, Decker encouraged her to meet with Dan Faust of Diakonos and to consider Diakonos as a funding partner. Mousa learned that Diakonos had obtained a copy of the UT-Gensetix License, which was subject to strict confidentiality provisions. Fannin Innovation subsequently withdrew from consideration of the partnership with Gensetix, citing, according to Mousa, Decker's unwillingness to enter into the partnership. Gensetix entered into a non-disclosure

5

and confidentiality agreement with Decker, a copy of which was attached to Mousa's affidavit.

According to Mousa, Decker agreed that he would cooperate with Gensetix in continuing to develop his research and "bring it to market" under the UT-Gensetix License as well as under any potential agreement that Gensetix made with BCM. Gensetix agreed to provide funding for such efforts in what "Decker referred to as a 'handshake agreement.'" With regard to the "handshake agreement" with Decker, Mousa attached email exchanges between the two. In the first email from Decker to Mousa, Decker explained that he did not have control over BCM's pursuit of patents or licensing agreements. In the second email, Mousa referred to an email allegedly sent by Decker with a subject line of "handshake agreement." No email with the subject line, "handshake agreement" was attached to Gensetix's response.

Mousa also attached a copy of an email from BCM notifying her that BCM had decided to withdraw its interest in licensing Decker's technologies to Gensetix. Mousa later learned that BCM had partnered with Diakonos to further develop and license Decker's research.

After a hearing, without stating its reasons, the trial court granted the motions to dismiss. After receiving evidence of attorneys' fees, the trial court entered final judgments of dismissal and awarded attorneys' fees to the Decker Parties. Gensetix appeals those judgments.

ANALYSIS

In three issues Gensetix argues (1) the trial court erred in determining that the TCPA applies to its claims; (2) the trial court erred in determining that Gensetix failed to establish by clear and specific evidence a prima facie case for each element of its claims; and (3) the fee-shifting provisions of the TCPA are unconstitutional

6

under both the United States and Texas Constitutions.

## I.   Standard of Review and Governing Law

We consider whether the trial court properly dismissed Gensetix's claims under the TCPA, which is codified in Chapter 27 of the Texas Civil Practice and Remedies Code. Tex. Civ. Prac. & Rem. Code §§ 27.001-.011.[1] The TCPA is an anti-SLAPP law; "SLAPP" is an acronym for "Strategic Lawsuits Against Public Participation." *Fawcett v. Grosu*, 498 S.W.3d 650, 654 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (op. on reh'g). The TCPA is intended "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, to protect the rights of a person to file meritorious lawsuits for demonstrable injury." Tex. Civ. Prac. & Rem. Code § 27.002; *Cox Media Grp., LLC v. Joselevitz*, 524 S.W.3d 850, 859 (Tex. App.—Houston [14th Dist.] 2017, no pet.). The TCPA "protects citizens from retaliatory lawsuits that seek to intimidate or silence them" from exercising their First Amendment freedoms and provides a procedure for the "expedited dismissal of such suits." *In re Lipsky*, 460 S.W.3d 579, 586 (Tex. 2015). We construe the TCPA liberally to effectuate its purpose and intent fully. *See Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 894 (Tex. 2018); *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 899 (Tex. 2017); Tex. Civ. Prac. & Rem. Code § 27.011(a).

To further its stated goals, the TCPA establishes a mechanism for summary dismissal of lawsuits that unacceptably threaten the rights of free speech, the right to petition, or the right of association. *See Lipsky*, 460 S.W.3d at 589; *Fawcett*, 498

---

[1] The Legislature recently amended the TCPA. Those amendments became effective September 1, 2019, and do not apply to this suit. In this opinion, all citations to the TCPA refer to the pre-amendment version that was in effect at the time Gensetix filed its suit.

S.W.3d at 655. A defendant invoking the TCPA's protections must show first, by a preponderance of the evidence, that the plaintiff's legal action is "based on, relates to, or is in response to" the defendant's exercise of one or more of the enumerated rights. *Lipsky*, 460 S.W.3d at 586.

We review the trial court's denial of a TCPA motion to dismiss de novo. *Joselevitz*, 524 S.W.3d at 859. Under the de novo standard, we "make an independent determination and apply the same standard used by the trial court in the first instance." *Id.* (internal quotation omitted). The basis of a legal action is not determined by the defendant's admissions or denials but by the plaintiff's allegations. *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017). When it is clear from the plaintiff's pleadings that the action is covered by the TCPA, the defendant need show no more. *Id.*; *see also O'Hern v. Mughrabi*, 579 S.W.3d 594, 602 (Tex. App.—Houston [14th Dist.] 2019, no pet.).

If the defendant makes the initial showing, the burden shifts to the plaintiff to establish by clear and specific evidence a prima facie case for each essential element of the claim in question. *See Lipsky*, 460 S.W.3d at 587. "Prima facie case" refers to the quantum of evidence required to satisfy the nonmovant's minimum factual burden and generally refers to the amount of evidence that is sufficient as a matter of law to support a rational inference that an allegation of fact is true. *See id.* at 590; *Deaver v. Desai*, 483 S.W.3d 668, 675–76 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

While the TCPA imposes no elevated evidentiary standard, the evidence offered to support a prima facie case must be "clear and specific." This requires "more than mere notice pleading." *Bedford v. Spassoff*, 520 S.W.3d 901, 904 (Tex. 2017) (per curiam). Clear and specific evidence means that the nonmovant must provide enough detail to show the factual basis for its claim. *Bedford*, 520 S.W.3d

8

at 904. If the movant's constitutional rights are implicated and the nonmovant has not met the required showing of a prima facie case, the trial court must dismiss the nonmovant's claim. Tex. Civ. Prac. & Rem. Code § 27.005. The items the trial court shall consider in determining whether a legal action should be dismissed under the TCPA expressly include "the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." Tex. Civ. Prac. & Rem. Code § 27.006(a).

## II. Applicability of TCPA

Our first inquiry is whether the Decker Parties showed by a preponderance of the evidence that the TCPA applies to Gensetix's claims. A party moving for dismissal under the TCPA bears the initial burden to show by a preponderance of the evidence that the legal action against them is "based on, relates to, or is in response to" the exercise of either: (1) the right to free speech; (2) the right to petition; or (3) the right of association. Tex. Civ. Prac. & Rem. Code §§ 27.003(a), 27.005(b); *see S & S Emergency Training Sols., Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018).

The TCPA defines both the right of free speech and the right of association as involving communications. Tex. Civ. Prac. & Rem. Code § 27.001(2)–(3). Under the TCPA, a "communication between individuals who join together to collectively express, promote, pursue, or defend common interests" constitutes an exercise of the right of association. *Id*. § 27.001(2). A communication includes "the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id*. § 27.001(1).

## III. Free Speech

Gensetix argues that its pleadings do not implicate the right of free speech

9

because (1) their communications were made in connection with a private business dispute, which is not a matter of public concern; and (2) Gensetix's claims are not predicated solely on communications.

## A. Gensetix's claims relate to communications as defined by the TCPA.

The TCPA provides its own definition of "exercise of the right of free speech." The statutory definition is not fully coextensive with the constitutional free-speech right protected by the First Amendment to the United States Constitution and article I, section 8 of the Texas Constitution. *Adams*, 547 S.W.3d at 892. The TCPA defines the exercise of free speech as "a communication made in connection with a matter of public concern." Tex. Civ. Prac. & Rem. Code § 27.001(3). A "'[c]ommunication' includes the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." Tex. Civ. Prac. & Rem. Code § 27.001(1). "The plain language of the statute imposes no requirement that the form of the communication be public." *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015)

Turning to Gensetix's allegations in its live pleading, Gensetix sued the Decker Parties contending that Decker breached contracts with Gensetix and tortiously interfered with prospective business relationships. Gensetix further alleged that all three defendants tortiously interfered with contracts that Gensetix had formed with UT. Gensetix alleged that Decker thwarted its "deals" with BCM and Fannin by approaching BCM and making "statements that disparaged Gensetix and/or discouraged BCM from concluding their agreements with Gensetix." (CR 10) Gensetix further alleged that Decker violated a nondisclosure agreement by communicating with BCM and Diakonos. As to all three defendants Gensetix alleged that they agreed amongst themselves to willfully and intentionally interfere

10

with Gensetix's contract with UT.

At the factual core of Gensetix's claims are communications amongst the Decker Parties to the exclusion of Gensetix. Gensetix alleged that the Decker Parties "communicated about and agreed to" interfere with Gensetix's existing contract with UT. In asserting its breach-of-contract claims against Decker, Gensetix claimed that Decker "disclosed Gensetix's confidential information." Therefore, the factor of a communication has been met. *See, e.g., Abatecola v. 2 Savages Concrete Pumping, LLC*, No. 14-17-00678-CV, 2018 WL 3118601, at *8 (Tex. App.—Houston [14th Dist.] June 26, 2018, pet. denied) (mem. op.) (holding that a tortious interference claim "would necessarily have required communications or 'the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic.'").

## B. Gensetix's claims against the Decker Parties are related to their right to free speech as matters of public concern.

Gensetix further argues that its claims do not implicate the Decker Parties' rights to free speech because their communications do not involve matters of public concern as defined by the TCPA. A "matter of public concern" includes an issue related to, inter alia, "health or safety" or "a good, product, or service in the marketplace." Tex. Civ. Prac. & Rem. Code § 27.001(7). The TCPA does not require that the statements specifically mention any of the listed matters of public concern, nor does it require more than a tangential relationship to same; rather, the TCPA applies so long as the movant's statements are "in connection with" "issue[s] related to" any of the matters of public concern listed in the statute. *ExxonMobil Pipeline Co.*, 512 S.W.3d at 900. Private communications made in connection with a matter of public concern fall within the TCPA's definition of the exercise of the right of free speech under the TCPA. *Lippincott*, 462 S.W.3d at 509.

11

To be protected, the TCPA does not require that the communication "specifically mention" the matter of public concern. *ExxonMobil Pipeline*, 512 S.W.3d at 900. Indeed, "not every communication related somehow to one of the broad categories set out in section 27.001(7) always regards a matter of public concern." *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 137 (Tex. 2019). The communication must have "public relevance beyond the pecuniary interests of the private parties involved." *Id*. at 136. That is, the communication must refer "to matters 'of political, social, or other concern to the community,' as opposed to purely private matters." *Id*. at 135 (quoting *Brady v. Klentzman*, 515 S.W.3d 878, 884 (Tex. 2017)). The communication must address a "a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Brady*, 515 S.W.3d at 884 (quoting *Snyder v. Phelps*, 562 U.S. 443, 453 (2011)).

Gensetix's claims are related to the Decker Parties' communications about a matter of public concern, i.e., "a good, product, or service in the marketplace." The Supreme Court of Texas has instructed, "Given the 'in the marketplace' modifier, the TCPA's reference to 'a good, product, or service' does not swallow up every contract dispute arising from a communication about the contract. By referring to communications made in connection with goods, products, or services 'in the marketplace,' the definition confirms that the right of free speech involves communications connected to 'a matter of public concern.'" *Creative Oil*, 591 S.W.3d at 134. In *Creative Oil*, the court acknowledged that, in previous decisions, it had held that private communications can be covered by the TCPA. *Id*. (citing *ExxonMobil Pipeline*, 512 S.W.3d 895, and *Lippincott*, 462 S.W.3d 507). However, the court distinguished those cases, noting that they "involved environmental, health, or safety concerns that had public relevance beyond the pecuniary interests of the private parties involved," whereas the case before it did not. *Id*.

12

Here, the dispute between the parties is not simply a private contract dispute affecting only the fortunes of the private parties involved. At the heart of the dispute is Decker's medical research, which is a "subject of general interest and of value and concern to the public." *Brady*, 515 S.W.3d at 884. The subject matter of the dispute removes this from a matter only affecting the fortunes of the parties involved and squarely places it in the realm of a good, product, or service in the marketplace. *See ExxonMobil Pipeline*, 512 S.W.3d at 901 (statements, although private among employees, related to a matter of public concern because they concerned a process related to the potential environmental, health, safety, and economic risks associated with noxious and flammable chemicals overfilling and spilling onto the ground); *Lippincott*, 462 S.W.3d at 510 (emails related to whether nurse anesthetist properly provided medical services to patients were matters of public concern); *Baumgart v. Archer*, 581 S.W.3d 819, 825–26 (Tex. App.—Houston [1st Dist.] 2019, pet. denied) (holding that news report in television broadcast and web article allegedly implying former peace officer's guilt of murder of deputy constable related to "health or safety" and were thus protected under TCPA).

Citing *Brugger v. Swinford*, No. 14-16-00069-CV; 2016 WL 4444036 at*3 (Tex. App.—Houston [14th Dist.] Aug. 23, 2016, no pet.) (mem. op.), Gensetix argues that the Decker Parties' communications were private communications made in connection with a business dispute and, therefore, not a matter of public concern under the TCPA. In *Brugger*, this court held that a lawyer's allegedly defamatory statements to shareholders about a corporate officer were made in course of a dispute between the shareholders and corporation, and were not communications in connection with a matter of public concern. *Id.* That case is distinguishable on its facts in that the communications in *Brugger* were restricted to a private business dispute.

The Supreme Court of Texas warned in *Creative Oil*, that "A private contract dispute affecting only the fortunes of the private parties involved is simply not a 'matter of public concern' under any tenable understanding of those words." 591 S.W.3d at 137. The contract disputes at issue here do not involve a simple business dispute and do not simply affect "only the fortunes" of the Decker Parties. Decker's cancer research and BCM and Diakonos's ability to bring that research to the public affect the health of the community at large. If Decker's research proves fruitful, the Decker Parties stand to benefit; however, the public at large also stands to benefit with the addition of another weapon in the battle against cancer. As such, the Decker Parties' communications related to a matter of public concern and, thus, are speech protected by the TCPA.[2]

Accordingly, we overrule Gensetix's first issue asserting that the TCPA does not apply to its claims. We conclude that the Decker Parties made the initial showing required under the TCPA and the burden then shifted to Gensetix to establish a prima facie case for its claims of breach of contract, tortious interference, and civil conspiracy.

## III.    Prima facie case

If the movants on a TCPA motion to dismiss show that the TCPA applies, the burden shifts to the nonmovants to establish by clear and specific evidence a prima

---

[2] The legislature amended the definition of "matter of public concern" and narrowed the phrase's scope to include, "(A) a public official, public figure, or other person who has drawn substantial public attention due to the person's official acts, fame, notoriety, or celebrity; (B) a matter of political, social, or other interest to the community; or (C) a subject of concern to the public." Act of June 2, 2019, 86th Leg., R.S., ch. 378, § 1, 2019 Tex. Gen. Laws 684, 684. However, the amendment expressly provides that this change in law applies only to a legal action filed on or after the September 1, 2019, the effective date of the amendment. See Act of June 2, 2019, 86th Leg., R.S., ch. 378, § 11, 2019 Tex. Gen. Laws 684, 687. Our conclusion is limited to the pre-amended version of the statute.

facie case for each essential element of the claim in question to avoid dismissal. Tex. Civ. Prac. & Rem. Code § 27.005(c). The Supreme Court of Texas has noted that "[c]lear and specific evidence is not a recognized evidentiary standard[,]" and "[a]lthough it sounds similar to clear and convincing evidence, the phrases are not legally synonymous." *Lipsky*, 460 S.W.3d at 589.

We will first address what "evidence" we may consider when determining whether Gensetix met its burden to establish by clear and specific evidence a prima facie case for each essential element of its claims. Gensetix argues that we may consider its unverified pleadings in determining whether it has met its burden under the TCPA. The Decker Parties respond with the long-standing maxim that pleadings are not competent evidence, even if sworn or verified. *See Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer*, 904 S.W.2d 656, 660 (Tex. 1995); *Hidalgo v. Surety Sav. & Loan Ass'n*, 462 S.W.2d 540, 545 (Tex. 1971).

Gensetix argues that it met its burden under the TCPA through the allegations in its petition and the declaration of Mousa attached to its response to the motions to dismiss. Under the TCPA, however, general allegations that merely recite the elements of a claim will not suffice; rather, "a plaintiff must provide enough detail to show the factual basis for its claim." *Lipsky*, 460 S.W.3d at 590–91. "Prima facie evidence" is that "minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *Id.* at 590 (internal quotations omitted).

Conclusory statements are not probative and accordingly will not suffice to establish a prima facie case. *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223–24 (Tex.2004). In other words, "bare, baseless opinions" are not "a sufficient substitute for the clear and specific evidence required to establish a prima facie case" under the TCPA. *Lipsky*, 460 S.W.3d at 592. Based on section 27.006(a)'s directive ("the court shall consider the pleading and supporting and opposing affidavits") and

the Texas Supreme Court's interpretation that "pleadings and evidence" setting forth the factual basis for a claim are sufficient to resist a TCPA motion to dismiss, this court has held that a nonmovant under the TCPA was permitted to rely on his pleadings in addition to the attachments to the pleadings in response to a motion to dismiss. *See Fawcett*, 498 S.W.3d at 660.

We do not read this court's direction in *Fawcett*, to mean that pleadings in the context of the TCPA are to be considered on their own as evidence. In that case, unlike here, the nonmovant had attached evidence to his pleadings. *Id*. We are further unpersuaded by the authority cited by Gensetix for the proposition that they need not present evidence in response to a TCPA motion to dismiss. Gensetix first cites a Third Court of Appeals decision in an original proceeding in which the Third Court stated, "the Act does not require a movant to present testimony or other evidence to satisfy his evidentiary burden." *In re Elliott*, 504 S.W.3d 455, 462 (Tex. App.—Austin 2016, no pet.). In coming to that conclusion the Third Court cited section 27.006 of the TCPA, which relates to the proof the *movant* is required to produce to determine whether a legal action is subject to the TCPA. *Id.*; *see also* Tex. Civ. Prac. & Rem. Code § 27.006(a). In this case, Gensetix is the *nonmovant* to which the burden has shifted to establish a prima facie case. The decision in *Elliott*, therefore, does not apply to Gensetix's burden.

Gensetix also cites *Gaskamp v. WSP USA, Inc.*, No. 01-18-00079-CV, 2018 WL 6695810 at *7 (Tex. App.—Houston [1st Dist.] Dec. 20,2018, no pet.) for the proposition that "while Section 27.006 contemplates that the movant and the non-movant may offer affidavits and, if permitted, other evidence obtained through discovery, nothing in the TCPA requires either party to offer evidence beyond the pleadings." Since the parties filed their briefs in this appeal, the court withdrew that opinion and issued *Gaskamp v. WSP USA, Inc.*, 596 S.W.3d 457 (Tex. App.—

16

Houston [1st Dist.] 2020, pet. filed), superseding the withdrawn opinion. In the 2020 *Gaskamp* opinion, the court held that the TCPA did not apply to the nonmovant's claims and that, consistent with the court in *Elliott*, and the plain language of the statute, when determining whether the *movant* has met its burden under the TCPA the movant may rely on the pleadings alone. *Id.* at 482.

This court recently addressed the issue of whether a nonmovant in attempting to defeat a TCPA motion could rely on the allegations in his pleadings alone. *See Buzbee v. Clear Channel Outdoor*, No. 14-19-00512-CV; 2020 WL 6738021 (Tex. App.—Houston [14th Dist.] November 17, 2020, no pet. h.). Quoting *Lipsky*, 460 S.W.3d at 590, we held, "Once the court is satisfied that the Act applies, and the burden shifts to the non-movant, the TCPA requires something beyond allegations in the pleading "to support a rational inference that an allegation is true." *Buzbee*, 2020 WL 6738021 at \*10.

We therefore reject Gensetix's proposition that a nonmovant can rely on the allegations in the pleadings alone as prima facie evidence of its claims. Gensetix, as the *nonmovant*, must produce "clear and specific evidence" to establish a prima facie case of each of its claims; it cannot rely on its pleadings alone. In considering whether Gensetix met its burden we review not only Gensetix's pleadings but the evidence attached to its response to the motion to dismiss.

### A. Gensetix did not produce clear and specific evidence of damages in connection with its claims against Decker.

The statute does not define "clear and specific evidence," but the Texas Supreme Court has interpreted the phrase to impose more than "mere notice pleading" and that "minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *Lipsky*, 460 S.W.3d at 590–91.We review both the pleadings and evidence attached to Gensetix's motion to dismiss to

determine whether Gensetix has provided "enough detail to show the factual basis for its claim." *Id.*

Gensetix asserted claims against Decker for breach of contract, promissory estoppel, and tortious interference with a potential business relationship. Damages is a required element of each of Gensetix's claims. *See West v. Triple B. Servs., LLP*, 264 S.W.3d 440, 446 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (to recover on a breach-of-contract claim, plaintiff must have sustained damages as a result of the defendant's breach); *Wheeler v. White*, 398 S.W.2d 93, 97 (Tex. 1965) ("Where the promisee has failed to bind the promisor to a legally sufficient contract, but where the promisee has acted in reliance upon a promise to his detriment, the promisee is to be allowed to recover no more than reliance damages measured by the detriment sustained."); *Baty v. ProTech Ins. Agency*, 63 S.W.3d 841, 860 (Tex. App.— Houston [14th Dist.] 2001, pet. denied) (to prevail on claim for tortious interference with a prospective business relationship, the plaintiff must show it suffered actual harm or damages as a result of the defendant's interference).

To recover on a breach-of-contract claim, the plaintiff must show that it sustained damages as a result of the defendant's breach. *West*, 264 S.W.3d at 446. The goal in measuring damages for a breach-of-contract claim is to provide just compensation for any loss or damage actually sustained as a result of the breach. *Parkway Dental Assocs., PA v. Ho & Huang Props., LP*, 391 S.W.3d 596, 607 (Tex. App.—Houston [14th Dist.] 2012, no pet.). The normal measure of damages for a breach-of-contract claim is the expectancy or benefit-of-the-bargain measure. *Id.* The purpose of this measure of damages is to restore the injured party to the economic position it would have occupied had the contract been performed. *Id.*

The basic measure of actual damages for tortious interference with contract is the same as the measure of damages for breach of the contract with which the

18

defendant allegedly interfered, to put the plaintiff in the same economic position he would have been in had that contract actually been performed. *See Am. Nat'l Petroleum Co. v. Transcon. Gas Pipe Line Corp.*, 798 S.W.2d 274, 278 (Tex. 1990). The same is true for tortious interference with prospective business relationships. *Baty*, 63 S.W.3d at 860 (Damages for a claim of tortious interference with prospective business relationships include actual harm as a result of the defendant's interference).

Damages for promissory estoppel are "not measured by the profits that such party's reliance led him to expect, but instead are limited to the amount necessary to compensate that party for a loss already suffered." *Allied Vista, Inc. v. Holt*, 987 S.W.2d 138, 142 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) (quoting *Sun Oil Co. v. Madeley*, 626 S.W.2d 726, 734 (Tex. 1981)).

Gensetix alleged that Decker breached a non-disclosure agreement and a "handshake" cooperation agreement. Gensetix alleged its damages consisted of "out-of-pocket costs, lost intellectual property licenses, lost revenue, and lost goodwill." In Mousa's declaration she alleged that Decker's alleged breach and interference "rendered Gensetix's performance of its obligations under the UT License Agreement more expensive, burdensome, and difficult—particularly Gensetix's obligations regarding commercialization and clinical trial progress."

As to the promissory estoppel claim, Gensetix alleged that it suffered out-of-pocket expenses paid in reliance on Decker's promises. As damages for alleged tortious interference with a prospective business claim, Gensetix alleged it suffered "out-of-pocket costs, lost revenue, and goodwill."

Generally, in alleging damages for Decker's actions, Gensetix alleged in its pleading that Decker's alleged interference with the Fannin Innovation relationship and the BCM relationship caused injury and damages:

19

- By undermining and delaying Gensetix's ability to share costs, fund, and manage commercialization activities and clinical trials;

- Gensetix had to spend additional time and money searching for other potential business partners once the Fannin Innovation deal did not go forward;

- Gensetix was deprived of intellectual properly licenses and related revenue; and

- Gensetix invested time and money in applying for and obtaining patents, legal fees for intellectual property analysis, and financial support directly to Decker and his lab.

In its prayer for relief Gensetix sought "damages likely to exceed $1,000,000." Gensetix appears to seek lost profits damages from Decker's alleged breach of contract and the claims for promissory estoppel, and tortious interference with prospective business relationships. At a minimum, opinions or lost-profit estimates must be based on objective facts, figures, or data from which the lost-profits amount may be ascertained. *Szczepanik v. First S. Trust Co.*, 883 S.W.2d 648, 649 (Tex. 1994).

The term "prima facie case" "refers to evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted." *Lipsky*, 460 S.W.3d at 590. In *Lipsky*, the nonmovant presented evidence of damages in the form of an affidavit stating that the nonmovant suffered "direct pecuniary and economic losses and costs, lost profits, loss of its reputation, and loss of goodwill in the communities in which it operates . . . in excess of three million dollars." *Id.* The supreme court held that the affidavit was conclusory and insufficient to satisfy the TCPA's requirement of clear and specific evidence. *Id.* The court further held that general averment of economic losses and lost profits, without more, failed to satisfy the minimum requirements of the TCPA. *Id.* at 592–93.

Here, Gensetix's pleadings and Mousa's declaration are less specific than the

evidence found insufficient in *Lipsky*. Opinions must be based on demonstrable facts and a reasoned basis. *Id*. at 593. Gensetix's proof of damages consists of general descriptions of damages by Mousa and Gensetix's unverified petition, which do not constitute clear and specific evidence of damages. Mousa's declaration described that as a result of Decker's alleged conduct, "Gensetix has lost the ability to share in the proceeds of bringing to market the treatments advanced by Decker" and that Decker "rendered Gensetix's performance of its obligations under the UT License Agreement more expensive, burdensome, and difficult—particularly Gensetix's obligations regarding commercialization and clinical trial progress." Gensetix made no attempt to "quantify any measure of its purported damages" and there "is no clear and specific evidence of any injury." *See Toth v. Sears Home Improvement Products, Inc.*, 557 S.W.3d 142, 158 (Tex. App.—Houston [14th Dist.] 2018, no pet.)

Relying on *Deuell v. Tex. Right to Life Comm., Inc.*, 508 S.W.3d 679, 689 (Tex. App.—Houston [1st Dist.] 2016, pet. denied), Gensetix argues that it need only present evidence to support a rational inference as to the existence of damages, not their amount or constituent parts. In *Deuell*, the plaintiff sued State Senator Bob Deuell for tortious interference with a contract when the senator sent a cease-and-desist letter to radio stations resulting in the stations dropping the plaintiff's advertisements. *Id*. at 683. The plaintiff, in addressing damages to avoid dismissal under the TCPA, followed up general descriptions of loss with evidence that it "paid approximately $15,037 for the placement and airing of the new radio advertisements with CBS Radio Texas." *Id*. at 688. Our sister court held that the plaintiff provided "clear and specific evidence that Deuell's act caused it actual damage or loss, in the form of costs to produce a new radio advertisement and to procure additional airtime to make up for time the original advertisement had been suspended." *Id*. The court continued that there was sufficient evidence the plaintiff "incurred specific costs to

21

replace the contracted-for advertising services." *Id*. at 689. The plaintiff in *Deuell* cited specific out-of-pocket costs incurred. Gensetix has not.

While Gensetix need not prove all of its damages to satisfy the standard under the TCPA, it must provide evidence of some damages. Gensetix failed to present any evidence of the amount of lost revenue attributable to Decker's alleged breach of contract or interference with Gensetix's prospective business relationships, extra expenses incurred as a result of Decker's granting a license to BCM and Diakonos, or the amount of out-of-pocket expense it incurred supporting Decker's research in detrimental reliance on Decker's promises.

Gensetix's pleadings and evidence with regard to damages are conclusory and not "clear and specific evidence" of any particularized harm. *See Lipsky*, 460 S.W.3d at 592–93 (general averment of economic losses and lost profits, without more, failed to satisfy the minimum requirements of the TCPA); *Better Bus. Bureau of Metro. Houston, Inc. v. John Moore Servs., Inc.*, 441 S.W.3d 345, 355 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (conclusory statements will not suffice to establish prima facie case). At most, we have Gensetix's conclusory allegations that it lost the ability to license Decker's research, which was "still under development that could potentially proceed to trials that might one day result in a commercialized treatment for cancer." A *potential* license for research under development that could *potentially* proceed to trials that *one day might* result in a commercialized treatment does not quantify any measure of Gensetix's purported damages. Gensetix failed to present evidence sufficient as a matter of law to establish damages if it is not rebutted or contradicted. *See Lipsky*, 460 S.W.3d at 590. Because there is no clear and specific evidence of damages, we conclude that Gensetix did not establish a prima facie case of an essential element of its breach of contract, tortious interference, and promissory estoppel claims against Decker.

**B.      Gensetix did not produce clear and specific evidence of damages in connection with its claims against the Decker Parties.**

Gensetix asserted claims against the Decker Parties for tortious interference with the UT-Gensetix License, and for civil conspiracy. Damages are a required element of each of Gensetix's claims. *See Prudential Ins. Co. of Am. v. Fin. Review Services, Inc.*, 29 S.W.3d 74, 77 (Tex. 2000) (to prevail on claim for tortious interference with a contract, the plaintiff must show it suffered actual harm or damages as a result of the defendants' interference); *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 142 (Tex. 2019) (civil conspiracy requires an underlying tort that has caused damages).

As with Decker, Gensetix sought lost profits damages as compensation for BCM and Diakonos's alleged tortious interference and conspiracy. Gensetix alleged in its pleadings that:

- Gensetix has been unable to realize any value from its own commercialization of the licensed technology;
- Gensetix was required to spend time and money to find additional funding and commercialization partners; and
- Gensetix has invested substantial time and money in anticipation of commercialization, including money spent on applying for and obtaining patents, legal fees for intellectual property analysis, and financial support directly to Decker and his lab in anticipation of licensing and commercialization.

As evidence of those damages, Gensetix points to the following two paragraphs of Mousa's declaration:

> On June 1, 2015, I received an email from Brian Phillips at BCM notifying me that BCM was withdrawing from negotiations with Gensetix to license Decker's technology and partner with BCM. Attached as Exhibit G is a true and correct copy of the text of that email as I forwarded it to a third party. As a result, Gensetix has lost the ability to share in the proceeds of bringing to market the treatments advanced

23

by Decker.

> The actions of Decker, Diakonos, and BCM, as described both above and in Gensetix's Petition in this lawsuit have rendered Gensetix's performance of its obligations under the UT License Agreement more expensive, burdensome, and difficult—particularly Gensetix's obligations regarding commercialization and clinical trial progress.

As with its allegations against Decker, Gensetix's general averments of economic loss are insufficient proof of damages under the TCPA. Gensetix does not offer clear and specific evidence of damages by failing to specify how its attempts at commercializing the UT-Licensed Technology have become "much more expensive, burdensome, and difficult"; what "time and money" Gensetix has spent "to find additional funding and commercialization partners other than Fannin Innovation"; or how and to what extent not having a license to Decker and BCM's patents "decreased the value of any deal that Gensetix can offer potential funding and commercialization partners" under the UT License. *See Bedford*, 520 S.W.3d at 906 ("'[G]eneral averments of direct economic losses and lost profits' do not satisfy the Act's clear-and-specific-evidence standard without 'specific facts illustrating how [a defendant's] alleged remarks about [a plaintiff's] activities actually caused such losses.'" (quoting *Lipsky*, 460 S.W.3d at 592–93)).

Gensetix did not identify any efforts to commercialize the UT Patents or initiate clinical trials that were frustrated or delayed, but rather asked the trial court to assume that any potential efforts to do so would be more burdensome, which does not meet the "clear and specific evidence" standard. As with its allegations of harm against Decker, Gensetix provided no objective facts, figures, or data to support its claim for lost profits. Because there is no clear and specific evidence of damages, we conclude that Gensetix did not establish a prima facie case of an essential element of its tortious interference and civil conspiracy claims against the Decker Parties.

Accordingly, we overrule Gensetix's second issue arguing the trial court erred in determining it failed to set forth a prima facie case for its claims under the TCPA.

## IV.  Constitutionality of the TCPA

In its third issue Gensetix argues that the mandatory fee-shifting provision of the TCPA violates the open-courts provision of the Texas Constitution and the First and Fourteenth Amendments to the United States Constitution. The open-courts provision of the Texas Constitution states, "All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law." Tex. Const. art. V, § 13. The First Amendment right to petition government for redress of grievances encompasses a right of access to the courts. *See Bill Johnson's Rests., Inc. v. National Lab. Rel. Bd.*, 461 U.S. 731, 741 (1983).

In the trial court, after the court granted the Defendants' motions to dismiss, but before the court awarded attorneys' fees and assessed sanctions, Gensetix filed a response to BCM's application for attorneys' fees and sanctions. In that response Gensetix argued that the TCPA's mandatory fee provision was unconstitutional in violation of the open-courts provision of the Texas Constitution and the First and Fourteenth Amendments to the United States Constitution.[3] At trial and on appeal Gensetix combines its arguments under the Texas and United States Constitutions. We, too, will review them together.

We begin our analysis with the presumption that a statute is constitutional. *Nootsie, Ltd. v. Williamson Cty. Appraisal Dist.*, 925 S.W.2d 659, 662 (Tex. 1996).

---

[3] The Decker Parties initially argue that Gensetix failed to preserve this issue for review in the trial court. Because Gensetix raised the constitutionality issue in the trial court and obtained an implicit ruling from the trial court when the court signed the fee orders, we hold that error was preserved. *See* Tex. R. App. P. 33.1.

The party challenging a statute's constitutionality bears the burden on that issue. *See Edgewood Indep. Sch. Dist. v. Meno*, 917 S.W.2d 717, 725 (Tex. 1995). *Landry's, Inc. v. Animal Legal Def. Fund*, 566 S.W.3d 41, 67 (Tex. App.—Houston [14th Dist.] 2018, pet. granted). A party may argue that a statute is unconstitutional on its face or as applied to that party. *See Tex. Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 518 & n.16 (Tex. 1995). A statute is unconstitutional on its face only if every application of the statute violates the Constitution. *See Nootsie*, 925 S.W.2d at 663. Because Gensetix does not expressly state whether it challenges the TCPA's constitutionality on its face or as applied, we determine this based on the arguments presented.

Gensetix argues that the TCPA "unreasonably restricts litigants' access to the courts through the levying of punitive fees that make it extraordinarily difficult and risky for plaintiffs to bring suit." From this argument, we determine that Gensetix is arguing that the statute is unconstitutional on its face in that Gensetix argues that every application of the statute violates the Constitution. *See Garcia*, 893 S.W.2d at 518 (holding that under a facial challenge the challenging party contends that the statute, by its terms, always operates unconstitutionally). Gensetix argues that the mandatory "fee-shifting structure, combined with the high burden on the plaintiff to go forward with its case well before full discovery can be taken, creates a high disincentive to litigate even meritorious cases."

The open-courts provision of the Texas Constitution guarantees litigants the right to their day in court. *Offenbach v. Stockton*, 285 S.W.3d 517, 522 (Tex. App.—Dallas 2009), *aff'd*, 336 S.W.3d 610 (Tex. 2011). But, it is not absolute. Rather, this requirement "'guarantees that a common law remedy will not be unreasonably abridged.'" *Tenet Hosp. Ltd. v. Rivera*, 445 S.W.3d 698, 703 (Tex. 2014) (quoting *Garcia*, 893 S.W.2d at 521). That is, while a statute that totally forecloses judicial

review may violate the provision, one that merely presents hurdles to judicial review may withstand scrutiny. *Offenbach*, 285 S.W.3d at 522–23. An open-courts challenge is a due process complaint which also "requires the party to use due diligence." *Id*. With this in mind, we turn to Gensetix's constitutional challenge.

The TCPA provides that upon dismissal of a legal action under the TCPA, "the court shall award to the moving party . . . court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action as justice and equity may require" as well as "sanctions . . . as the court determines sufficient to deter the party who brought the legal action from bringing similar actions described in this chapter." Tex. Civ. Prac. & Rem. Code § 27.009(a). To prevail on an open-courts challenge, Gensetix must show that a cognizable common-law claim is being restricted and that the restriction is unreasonable or arbitrary when balanced with the statute's purpose and basis. *See Mem'l Hermann Health Sys. v. Khalil*, No. 01-16-00512-CV, 2017 WL 3389645, at \*16 (Tex. App.—Houston [1st Dist.] Aug. 8, 2017, pet. denied) (mem. op.) (holding TCPA's fee-shifting provision does not violated the open-courts provision).

We agree with our sister court that the fee-shifting provision does not violate the open-courts provision. *Id.*, 2017 WL 3389645, at \*15–17. In *Khalil*, the court held that the fee-shifting provision of the TCPA did not act as a barrier to a party's right to petition for redress. *Id.* 2017 WL 3389645, at \*16. In coming to that conclusion, the court considered the TCPA's express purpose to balance protections for persons exercising their constitutional rights of expression and association with protections for persons filing meritorious lawsuits for demonstrable injury. Tex. Civ. Prac. & Rem. Code § 27.002.

Gensetix argues, however, that the court in *Khalil* did not address "the open-court violation caused by the mandatory application of conditional appellate fees

27

upon dismissal of a TCPA action." We find the court's reasoning in *Khalil* applies equally to the award of conditional appellate fees. In *Khalil*, our sister court noted that the TCPA has provisions in place to limit the impact of the fee-shifting provision. *Khalil*, 2017 WL 3389645 at *16. Notably, the attorney's fees, even conditional appellate fees, are not imposed on parties who meet the burden placed on them under the TCPA, of establishing by "clear and specific evidence" the elements of their prima facie case to avoid dismissal. *Id.*; *see also* Tex. Civ. Prac. & Rem. Code § 27.005(c). The fee provision in the TCPA shifts litigation costs from the prevailing party to the party who failed to meet its burden. *Khalil*, 2017 WL 3389645 at * 16.

The same is true for conditional appellate fees. If a nonmovant in a TCPA action is successful on appeal those fees would be reversed along with the trial court's dismissal order. A trial court may not penalize a party for taking a successful appeal. *Keith v. Keith*, 221 S.W.3d 156, 171 (Tex. App.—Houston [1st Dist.] 2006, no pet.). The TCPA does not contain any provision contrary to the general rule that because a party should not be penalized for successfully appealing an error occurring in a lower court, appellate attorney's fees must be conditioned upon a successful appeal. *See McGibney v. Rauhauser*, 549 S.W.3d 816, 827 (Tex. App.—Fort Worth 2018, pet. denied) (holding that TCPA appellate fee award must be conditional on successful appeal). Therefore, the TCPA's conditional appellate fee awards do not create an impermissible pay-to-play barrier to the courts; the awards shift litigation costs after resolution of a claim. *See Landry's*, 566 S.W.3d at 67; *Khalil*, 2017 WL 3389645 at *16. We therefore overrule Gensetix's third issue challenging the constitutionality of the fee-shifting provisions of the TCPA.

## CONCLUSION

Having overruled each of Gensetix's issues on appeal we affirm the trial court's dismissal of Gensetix's claims.


/s/ Jerry Zimmerer
   Justice


Panel consists of Chief Justice Frost and Justices Zimmerer and Poissant (Frost, C.J., concurring) (Poissant, J., dissenting).